# Draper *v.* State, *ex rel.* Patillo.

*Quo Warranto.*

(Decided December 22, 1911. Rehearing denied February 17, 1912. 57 South. 772.)

*Municipal Corporation; Appointment; Officers; Acts Constituting.*—Appointment by the governor of a commissioner for a city is not an appointment to a state office within the provisions of section 1474, Code 1907, and hence, does not require a commission. The facts stated and held to constitute a complete appointment

without a commission, and that the governor could not thereafter cancel the appointment.

(Simpson and Anderson, JJ., dissenting.)

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Quo warranto by the State, on the relation of Pierce Patillo, against James L. Draper, to determine the right to the office of City Commissioner of Hartselle, Ala. There was a decree for relator, and defendant appeals. Affirmed.

It is made to appear from the application: That petitioner was an applicant for the office of commissioner of Hartselle, and that on the 23d day of August, 1911, the Governor of the state caused to be addressed to relator a letter or printed communication advising him of his appointment as commissioner for a term of three years. This letter is made an exhibit. Relator then qualified by filing his bond and oath of office with the judge of probate of Morgan county as required by law, and the judge of probate thereupon officially advised the Governor of the appointment and the fact that petitioner had qualified. That the Governor, on receipt of this communication, indorsed or caused to be indorsed on the back of said communication the following: "Send Com. to P. Patillo, Hartselle, Ala."—and caused said official communication with indorsement thereon, to be placed in an official wrapper in the office of said Governor, which official wrapper bore the following indorsement: "Authorized or indorsed thereon by the Governor as follows: Morgan County. Application of P. Patillo; P. O., Hartselle. For appointment to office of city commissioner for three years' term. Precinct ——. Appointed 8/23/1911. By order of the Governor: John D. McNeel, Private Secretary. Notified ——. Qualified 8/26/1911. Fee paid 8/26/11." That

an attempted cancellation has been made of the date of
qualification and the date of payment of fee by lines
drawn through said date. It is further alleged that
there is a record kept in the office of the Governor,
known as the record of the recording secretary, in
which is entered the names and other data of executive
appointments of the Governor, and that on said record
appears and did appear the following, made and entered
prior to September 9, 1911: "Morgan County Execu-
tive Appointments. Name, Patillo, P.; address, Hart-
selle; office, commissioner; date appointed, 8/23/11; re-
marks, three-year term." Here follow similar entries
as to other commissioners. And relator shows that
across the face of such entries have been drawn pencil
marks, and across the face thereof has been written the
legend "Canceled," by whom relator is not informed or
advised. The other parts of the petition set up the pre-
tended appointment of those who assumed to be acting
as commissioners, made some time after the matters
above set forth, and show that the town of Hartselle,
some time before any appointments were made, had in
the proper manner elected to have a commission form
of government and that the same belonged to class D of
cities in Alabama. Petition further sets out the acts
and doings of those alleged to have usurped the office,
etc.

TIDWELL & SAMPLE, for appellant. The office to which
the relator seeks to have himself restored is a state of-
fice and a commission is the only legal evidence of title.
—*People v. Lynch,* 21 Am. Rep. 692; Dillon on Mun.
Corp. sec. 97; *Montgomery v. The State,* 107 Ala. 372;
*People v. Hurlburt,* 24 Mich. 83; *State v. Curley,* 5 Colo.
419; *State v. Sayre,* 118 Ala. 31; *State v. Detroit,* 37 L.
R. A. 219; 30 Gratt. 34; 3rd South. 82; 20 L. R. A. (N.

S.) 1128; Sec. 1474, Code 1907. Under the evidence relator was not appointed.—Acts 1911, p. 593; 10 Enc. of Evid. 722 and note; *Coggin v. Myrick,* 31 South. 22; 34 Cyc. 585; 6 Cal. 674; Jones on Evid. 645. No appointment can be valid except an appointment in writing.— 70 N. Y. 521; 38 Pac. 68; Meechum on Public Offices, sec. 115; 25 Pac. 684; 27 L. R. A. 45; 10 South. 125; 2 McQuillan Mun. Corp. sec. 463; 23 A. & E. Enc. of Law, 344; *Thompson v. The State,* 21 Ala. 48.

E. W. GODBEY, for appellee. Section 1474 has no application as the officer appointed was not a state officer. —*Ex parte Wiley,* 54 Ala. 226; *State ex rel. Burns.* 21 South. 290; *Buckner v. Gordon,* 81 Ky. 665; *State ex rel. Churchmen,* 51 Atl. 49; *Hayes v. Henry,* 62 Cal. 557; 36 Cyc. 853; 14 L. R. A. 646; 62 Mo. 370; *Johnson v. The State,* 31 South. 493; 120 S. W. 29. The language used was sufficient to constitute an appointment. —68 N. Y. 514; 29 Cyc. 1371; 146 U. S. 36; 51 Atl. 457; *Hill v. State,* 1 Ala. 559. No commission was necessary. —Section 5, Acts 1911, p. 594. The appointment was recorded.—164 U. S. 100; 10 Enc. of Evid. 716; 45 Am. Dec. 621; *Jordan v. McClure L. Co.,* 54 South. 415. There was no vacancy after the appointment, and hence, there was no power in the Governor to make another appointment.—18 Wend. 515; 9 Paige Ch. 507; 21 L. R. A. 539; 22 L. R. A. 754. It was not necessary that the appointment should be made in writing, although it was so made.—12 Grat. 303; 29 Cyc. 1373; 12 Mo. 199; 19 Am. Rep. 58; 12 Mod. 200; 2 La. Ann. 663; 22 Atl. 686; 9 Abbott 456.

ANDERSON, J.—While there appears to be some conflict in the authorities as to what constitutes an appointment to office, the definition of "what constitutes

appointment," and to which we adhere, is: Where the power of appointment is absolute, and the appointee has been determined upon, no further consent or approval is necessary, and the formal evidence of the appointment, the commission, may issue at once. Where, however, the assent or confirmation of some other officer or body is required, the commission can issue or the appointment be complete only when such assent or confirmation is obtained.—*People v. Bissell,* 49 Cal. 407. In either case the appointment becomes complete when the last act required of the appointing power is performed. —*State v. Barbour,* 53 Conn. 76, 22 Atl. 686, 55 Am. Rep. 65. In cases where a commission is required, the appointment is complete when the commission is signed by the executive, and sealed if necessary, and is ready to be delivered or transmitted to the appointee.—Meechem on Public Officers, § 114. There seems to be a distinction as to when the appointment becomes complete, in cases where the commission is to be signed by the appointing power and when signed and issued by another. If the commission is to be signed by the appointing power, the issuance of same is essential to a completion of the appointment.—*Conger v. Gilmer,* 32 Cal. 75. If, however, such formal act is to be performed by some one other than the appointing power, it constitutes no part of the appointing power. Section 1470 of the Code of 1907 requires commissions to offices to be signed by the Governor and countersigned by the Secretary of State, unless it be the commission to the Secretary of State, which must be signed by the Governor alone. Section 1469 provides what officers must have commissions, and does not include city commissioners or other officers not mentioned; but section 1474, in providing for filling vacancies in *all* state offices, requires that the appointee must be commissioned.

Therefore there is a field of operation for both statutes; section 1469 requiring commissions for all offices therein named, whether elected or appointed, and section 1474 requiring a commission to all offices appointed by the Governor to fill vacancies, whether among the officers named in section 1469 or not. Indeed, it seems to be the policy of our legislative system that a commission is essential to the exercise of the duties of a commissioned officer, as section 7447 of the Code makes it an offense for an officer required to have a commission to exercise the duties of the office without first having obtained the commission. This is an old section of the Code, and was amended, by implication, by new section 1472 of the Code, in so far as it might apply to elective officers who had provided themselves with a legal certificate of their election. As to all others, it is still in force, and indicates that all appointments should be made by the issuance of a commission, and which is essential to the exercise of the duties of the office. "The power to appoint to fill vacancies may exist in two classes of cases: (1) Vacancies in offices originally filled by appointment; and (2) vacancies in offices originally filled by election. A vacancy exists when there is no person lawfully authorized to assume and exercise at present the duties of the office."—Meechem on Public Officers, § 125. Mr. Meechem also says, in speaking of a newly created office, in section 132 of his work: "Whether a newly created office, which has never had an incumbent, and which no one is now legally authorized and qualified to assume, can be deemed vacant, so as to authorize an appointment to fill it, is a question upon which the authorities are not in harmony; but the weight of authority seems to be that it is to be deemed vacant." Thus it is said in Indiana: "There is no technical or peculiar meaning to the word 'vacant,' as used

in the Constitution. It means empty, unoccupied; as applied to an office, without an incumbent. There is no basis for the distinction urged that it applies only to offices vacated by death, resignation, or otherwise. An existing office, without an incumbent, is vacant, whether it be a new or an old one. A new house is as vacant as one tenanted for years which was abandoned yesterday. We must take the words in their plain usual sense."— *Stocking v. State,* 7 Ind. 326; *State v. Irvin,* 5 Nev. 111; *People v. Mott,* 3 Cal. 502; *Rhodes v. Hampton,* 101 N. C. 629, 8 S. E. 219.

We now come to the last and most serious question in the case: Are the commissioners of the city or town of Hartselle state officers within the meaning of section 1474 of the Code of 1907? Judge Dillon, in his great work on Municipal Corporations, in drawing a distinction between state and municipal officers (volume 1 [5th Ed.] § 97), says: "Questions have arisen *under special constitutional provisions* respecting the authority of the Legislature over *municipal offices and officers.* And here it is important to bear in mind the before-mentioned distinction between *state* officers—that is, officers whose duties concern the state at large, or the general public, although exercised within defined territorial limits—and municipal officers, whose functions relate exclusively to local concerns of the particular municipality. The administration of justice, the preservation of the public peace, and the like, although confided to local agencies, are essentially matters of public concern; while the enforcement of municipal by-laws proper, the establishment of local gasworks, of local waterworks, the construction of local sewers, and the like, are matters which ordinarily pertain to the municipality, as distinguished from the state at large." This section was approved and quoted in the opinion of

our own court in the case of *Montgomery v. State,* 107 Ala. 372, 18 South. 157. Said Campbell, C. J., in the case of *People v. Hurlbut,* 24 Mich. 83, 9 Am. Rep. 103 : "The preservation of the peace has always been regarded, both in England and in America, as one of the most important prerogatives of the state. It is not the peace of the city or county, but the peace of the king or state, that is violated by crimes and disorders. The prosecution is on behalf of the state. The trial is before tribunals created and regulated by the state. The remission of punishment is by the Governor of the state."

Acts 1911, p. 591, providing for a commission form of government in cities having a population of from 1,000 to 25,000 inhabitants, gives the commission authority and jurisdiction to preserve the peace and to enforce certain state statutes, as well as the by-laws and ordinances of the municipality. They shall have power to exercise the authority and jurisdiction, executive, legislative, and judicial as was exercised by the then existing mayor, aldermen and board of police commissioners, and all other boards except the boards of education, See section 6 of the act. Article 14 of the municipal law (page 596, vol. 1, Code of 1907), in providing for the enforcement of the law and the administration of justice, defines a "recorder" to be any person authorized therein to hold municipal court, and in the absence of any such recorder authorizes any councilman to preside over the court, and gives him the same power and authority therein granted to recorders. Section 1215, in defining the jurisdiction of recorders, also gives to the office the powers of an ex officio justice of the peace, except in civil matters, and also provides that in certain instances any councilman may act as recorder, with his full power and authority. The commissioners being state officers, to be first appointed by the Governor un-

der the terms of the act, the manner of making said appointments was governed by section 1474 of the Code of 1907, and which requires that all appointees to fill vacancies must be commissioned, and the issuance of which, we think, was essential to a complete appointment. In the case of *Ex parte Wiley,* 54 Ala. 226, the court did not hold that a county solicitor was not a state officer in the general acceptation of the term, but simply held that there was a broad distinction between officers properly termed state officers and those termed county officers, and that a county solicitor was not a state officer, as used and contemplated in section 23 of article 4 of the Constitution of 1868, relating to the impeachment of state officers. It was not held or intimated that a county solicitor was not a state officer in the general acceptation of the term. The same writer subsequently said, in the case of *Winter v. Sayre,* 118 Ala. 31, 24 South. 94: "The Constitution and the Legislature create two classes of public offices and officers— offices and officers of the state, and county offices and officers." Of course, there is a distinction between the two classes; but neither of these cases hold that county officers are not state officers also, or that a county officer is to no intent and purpose a state officer. Says Judge BRICKELL: "Every public officer, judicial, ministerial, or executive, deriving place and authority from the Constitution and laws is an officer of this state, and not of any other sovereignty or jurisdiction. If the mere abstract force of words be consulted, the intendant or mayor  *  *  *  may be said to be 'judges of this state.' "

Thus it would seem that these commissioners are state officers, under the broad and general use of the words, notwithstanding there may be a marked distinction between them and what are termed state and coun-

ty officers in their strict or proper use in a Constitution or law which deals separately and distinctly with state and county officers. On the other hand, it has been the legislative policy to require a commission as a condition precedent to the appointment by the Governor in filling all vacancies. The words "state and county officers," as used in section 1474, are intended to include all vacancies to state and county offices as used in a broad and general sense, and should not be confined to state and county officers in the restrictive sense, or to those officers as set out in section 1469 of the Code. Otherwise, section 1474 will read very differently from what it says, and would say all offices required to have a commission, or all officers mentioned in section 1469, instead of requiring that "all appointees must be commissioned," thus intending that a commission must issue as a condition precedent to the appointment to fill a vacancy. Nor is it reasonable to say that the statute requires a commission in some instances and not in others, for section 1474 contemplates that every appointment to be made by the Governor shall be completed by the issuance of a commission.

It may be conceded, however, for present purposes, that the office in question is strictly a municipal one, and not a state or county one, within the provision of section 1474 of the Code, yet it was made appointive at the outset, and while the act is silent as to how the Governor shall make the appointment, and does not in express terms require a commission, it must be concluded that the Legislature contemplated that the appointment should be made in the then existing form and manner, and under the terms of the law then existing and referable to appointments to be made by the Governor. In other words, until a recent date when officers of this character were made appointive by the Governor, he

supplied vacancies by appointment only, and almost, if not entirely, to state and county offices, and which said appointments were completed by the issuance of a commission as required by the statute; and it must be assumed that the Legislature intended and contemplated, in the present act, that the authority to appoint would be exercised under existing rules and regulations. It was well known when this act was passed that appointments by the Governor to fill vacancies could be completed only by the issuance of a commission, and the Legislature must have intended that these new appointments should be made in the same manner. When words which have a known meaning and significance are used in a statute, it must be presumed that the Legislature used or adopted them in their well-known meaning and sense; the contrary not appearing. The Legislature used the word "appoint," meaning that the vacancies would be filled in the same manner and with the same formality as then existing for appointing to vacancies; otherwise, they would have doubtless said the Governor should name the first commissioners, instead of "appoint." I do not think that the attempted appointment of the relator was complete, and that it was in fieri until the signing of a commission by the Governor, and it is my opinion that the respondent, who holds under a commission, is entitled to the office.

A majority of the court are of the opinion that the vacancy in question was not of a state office, and was not one which required a commission in order to complete the appointment to fill same—that the relator was legally and duly appointed, and which said appointment was beyond the control of the Governor. The case must therefore be affirmed.

Affirmed.

McClellan, Mayfield, Sayre, and Somerville, JJ., concur. Simpson and Anderson, JJ., dissent. Dowdell, C. J., not sitting.

SIMPSON, J.—I concur in the result of the opinion of Justice Anderson. I do not think that the office in question is a state office; but I concur in what is said by Anderson, J., as to the presumption arising from the laws in existence as to how gubernatorial appointments are made. There is reason in the remark of the Supreme Court of Indiana "that it is probably the law that, while title to an office is solely derived from executive appointment, the commission of the executive is the only legal evidence of such title."—*State v. Allen,* 21 Ind. 516, 83 Am. Dec. 370. I think that, at least, it may be said, whether a formal commission be required or not, there must be some distinct pronouncement by the Governor that the appointment is made. The direction by the Governor to the clerks in his office cannot amount to more than a direction about what *is to be done,* and, in the very nature of things, the matter must remain in fieri until the final declaration of the appointment is made, and, until that is done, be subject to recall by the Governor. The private secretary is the mouthpiece of the Governor, and not the recording secretary. If a commission is not necessary, and the private secretary, under the direction of the Governor, addresses a communication to the appointee, informing him of his appointment, that may be considered the final act; but in this case the evidence shows that the communication was not signed by the private secretary, but his name was signed by the recording secretary, without authority. It results that it was within the power of the executive to "hold up" the instructions previously given and make a new appointment.