[State ex rel. Wilkinson, et al. v. Lane.]

# State, *ex rel.* Wilkinson *v.* Lane.

## *Quo Warranto.*

(Decided April 10, 1913. Rehearing denied May 8, 1913.
62 South. 31.)

1. *Constitutional Law; Legislative Power; Limitation.*—The legislature of a state possesses all the legislative power which resides in the state under the Federal Constitution, except as that power is expressly or impliedly limited by the State Constitution.

2. *Same; Departments of Government; Municipal Officers.*—Sections 42-3 of the Constitution do not apply to municipal government, or to town or city officers, and there is no constitutional objection to placing executive, administrative or legislative duties upon a municipal officer, and the mere fact that he is a judicial officer does not preclude him from serving the municipality as an executive.

3. *Same; Statutes; Legislative Motive.*—The motive of the legislature in enacting a statute is not a proper subject for judicial examination.

4. *Statutes; Construction.*—In construing a statute, the courts will give effect to the plain and validly expressed intention of the legislature.

5. *Same; Local Laws.*—The acts creating Commission form of government in cities having a certain form of government are not local acts.

6. *Municipal Corporations; Officers; Kind.*—Mere municipal officers are not state officers within the meaning of the Constitution.

7. *Same.*—Under Acts 1911, p. 204, the Board of Commissioners there created is a municipal board only, and the members thereof are mere municipal officers, and the fact that the Governor appoints the first encumbent, does not affect the character of the officers as municipal officers.

8. *Same; Judicial Officers.*—Acts 1911, p. 204, creating the Commission form of government and clothing one of the commissioners with powers of a judicial nature, does not render such Commissioner other than a municipal officer, and the fact that the Act fails to provide appeals from his decision, and that he may exercise legislative and executive functions as well, does not destroy the character of his office as a municipal, judicial one.

9. *Same.*—The provisions of section 150, Constitution 1901, do not prohibit the judicial officers named from holding judicial offices which have attached to them duties other than judicial, but only from holding offices not judicial; hence, it does not prohibit a circuit judge from holding during the term for which he was elected the office of commissioner of a city, under appointment, operating under Acts

1911, p. 204, and exercising judicial functions of the city as its judicial officer.

10. *Same; Legislative Control.*—The legislature has full power to repeal, alter or amend the charter of a municipality, and to create a new municipality.

11. *Same; Commission Form; Statutes.*—The mere fact that the Governor of the State is to appoint the first three members of the Board of Commissioners of a city operating under the commission form of government provided in Acts 1911, p. 204, does not render the act unconstitutional.

12. *Same; Oath.*—The oath prescribed by Constitution, section 279, is required only from state, and not from municipal officers.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Quo warranto by the State, on relation of Horace C. Wilkinson and others, against A. O. Lane, to oust defendant, as Commissioner of the City of Birmingham, from office on the ground that at the time of his appointment he was serving under an election as Judge of the Circuit Court of Jefferson County. From an order overruling demurrers to the answer and denying the writ, relators appeal. Affirmed.

HORACE C. WILKINSON, for appellant. The respondent's office is an office under the state within the meaning of section 150 of the Constitution.—*Ex parte Roundtree,* 51 Ala. 42; *Sproull v. Lawrence,* 33 Ala. 674; *State v. Thompson,* 142 Ala. 98; *City of B'ham v. So. Ex. Co.,* 164 Ala. 529; *Davis v. Thomas,* 154 Ala. 279. The Constitution makers intended that the judges named in said section should be barred from holding any office in said state except a judgeship during the term for which they were elected. The municipal office to which respondent was appointed was a state office.—McQuillan Mun. Corp. 102 and cases cited; 33 S. W. 813; 41 Mo. 29; 37 L. R. A. 211; 126 Pa. 954; 49 All. 36; 72 Am. Dec. 169; *Montgomery v. State,* 107 Ala. 372; *Andrews v. State,* 78 Ala. 483; 63 Am. St. Rep. 178; 15 N. Y. 532.

If there is any doubt as to whether the office is an office under the state, the doubt must be resolved against defendant.—*State ex rel. Tillman v. Jackson*, 143 Ala. 145. The character of the office is to be determined not by the presence or absence of an official designation but by the nature of the functions to be performed.—*Joseph v. Randolph*, 71 Ala. 499; 7 Ohio St. 546. Under section 150 of the Constitution a judicial officer cannot hold office under any other government, and the defendant's office is certainly an office under any other government that the state or the United States.—Storey on Conflict of Laws, secs. 6 and 20; 23 Atl. 670; *Martin v. State*, 156 Ala. 89. The defendant's office is not a judicial office within the meaning of section 150—that is, the office of commissioner.—*Ex parte Roundtree, supra;* 5 Gratt. 518; 6 W. Va. 562; 21 S. W. 1081; 17 Ind. 169; 109 S. W. 758; *Joseph v. Randolph, supra;* 12 Ind. 569; 47 N. Y. Sup. 623. If the act permits the discharge of the duties of the office without the oath, it violates sec. 279 of the Constitution.—*Cavanaugh's Case*, 41 Ala. 399; *Gaines v. Harvin*, 19 Ala. 491. The commission form of government bill is a local law and void.—116 Fed. 295; 66 Ohio St. 453; 48 Ill. 590; *Sayres Case*, 142 Ala. 642; *Holt's Case*, 111 Ala. 372; *Savage v. Walsh*, 26 Ala. 619. The recall feature of the act renders it unconstitutional under section 175 of the Constitution.—*Nolen v. State*, 118 Ala. 154; 40 Am. St. Rep. 17; 44 Am. St. Rep. 788. The appointment by the Governor and legislature of a commission deprives the people of Birmingham of local self government, and renders the whole act unconstitutional.—24 Mich. 44; 4 L. R. A. 79; 4 L. R. A. 65; 4 L. R. A. 93; 34 L. R. A. 408; 41 L. R. A. 624; 56 L. R. A. 893; 81 S. W. 973; 81 S. W. 1206; 15 Am. Rep. 202.

[State ex rel. Wilkinson, et al. v. Lane.]

CABANISS & BOWIE, FRANK S. WHITE & SONS, RO-
MAINE BOYD, STERLING A. WOOD, and JAMES A. MITCH-
ELL, for appellee. As amicus curi, Hon. A. G. & E. D.
Smith, file a brief demonstrating that the act of the
legislature creating an additional judge for the 10th
Judicial Circuit was constitutionally valid, and sub-
mit authorities in support thereof, but in view of the
opinion it is not deemed necessary to here set it out.
On the original proposition involved counsel named
above insist that the judgment of the lower court should
be affirmed for the following reasons, and on the au-
thorities cited. The terms "offices under this state,"
"state offices," and "offices" generally, as found in state
constitutions, do not apply to or include municipal
offices, and especially is this true where the incumbents
do not exercise the functions of state officials.—*Draper
v. State,* 57 South. 775; *Ex parte Wiley,* 54 Ala. 226;
*Attorney General v. Connors* (Fla.) 9 South. 8; *State
v. Burns,* 38 Fla. 367, 21 South. 290; *State v. Church-
man* (Del.) 51 Alt. 47; *State v. Wilmington,* 3 Har.
(Del. 300; *Murphy v. Townsend,* (Ark.) 79 S. W.
782; *Peterson v. Culpepper,* 72 Ark. 230, 79 S. W. 783;
*Britton v. Steber,* 62 Mo. 370; *State v. Somnier,* 33 La.
Ann. 238; *State v. Montgomery,* 25 La. Ann. 138;
*Haynes v. Henry,* 62 Cal. 557; *People v. Provines,* 34
Cal. 520; *Long v. Rose,* (Ga.) 64 S. E. 84; *State v. Kirk,*
44 Ind. 401; *Mohon v. Jackson,* 52 Ind. 599; *Brickner
v. Gordon,* 81 Ky. 665; *Justices v. Harcourt,* 43 Ky.
499; *Brody v. West,* 50 Miss. 68; *Santo v. State,* 2 Ia.
220; *Attorney General v. Detroit,* (Mich.) 70 N. W.
450; 37 L. R. A. 211. The duties of the commissioner
of the city of Birmingham (or any city of the same
class) for the term ending the 1st Monday in November,
1915, are purely municipal, and he has no functions
pertaining to state affairs.—Acts of 1911, p. 204, sec. 5.

There is a clear distinction in Alabama between municipal corporations proper, and *involuntary quasi-corporations,* such as counties, which are merely civil divisions of the state, created by statute to aid in the administration of government.—*Askew v. Hale County,* 54 Ala. 639; *Dunn v. Court of County Revenue of Wilcox,* 85 Ala. 144-146. The Constitution of Alabama expressly distinguishes between "offices under this state," and offices under a municipality, or municipal offices.—Constitution of Alabama, secs. 68, 81, 101 and 281. The words "or any other government" in section 150 of the Constitution refer to a sovereign power, and do not extend the meaning of the section so as to include municipal offices.—Journal of the Constitution Convention, pp. 1385, 1397; *Wallace v. Board of Revenue,* 140 Ala. 572. The office of commissioner of the city of Birmingham, (or any other city of the one hundred thousand class) for the term ending on the first Monday in November, 1915, is a judicial office.—Act 1911, p. 204, sec. 5 and sec. 6; *Grider v. Talley,* 77 Ala. 422; *Rainey v. Ridgway,* 151 Ala. 534; *Higdon v. Jelks,* 138 Ala. 123; *Taylor v. Kolb,* 13 South. 780; *Winter v. Sayre,* 118 Ala. 22; *State, ex rel. Vandiver v. Burke,* 57 South. 872; *Twenty per cent. Cases,* 7 Ct. Cl. 293; *State v. Womack,* 4 Wash. 27; *Yellowstone Co. v. N. P. R. Co.,* 10 Mont. 420; *Matter of Cooper,* 22 N. Y. 882; *McGregor v. Balch,* 14 Vt. 428; *Vogel v. State,* 117 Ind. 374; *In re Gelding,* 57 N. H. 146; *Wise v. Withers,* 7 U. S. (3 Cranch) 331; *McVay v. Bipley,* 77 Conn. 136; *People v. Henry,* 62 Cal. 557. The act of March 31, 1911, providing for a commission form of government for cities of the class in which Birmingham belongs is not a local act.—*State, ex rel. Crenshaw v. Joseph,* 57 South. Rep. 942. The power conferred on the Governor by the said act to appoint each of the three commissioners at first, to

serve for a prescribed term, is not an unconstitutional provision, and does not render the act void.—Dillon on Municipal Corporations (5th Ed.) sec. 98; *Sheppard v. Dowling,* 127 Ala. 1; *Fox v. McDonald,* 101 Ala. 51.

DE GRAFFENRIED, J.—"The British Parliament has supreme and uncontrolled power, and may change the Constitution of England, and repeal even Magna Charta, which is itself only an act of Parliament." *In re Whitcomb,* 120 Mass. 118, 21 Am. Rep. 502.

The Legislature of Alabama has the same power that belongs to the British Parliament except in so far as its powers are abridged by the Constitution of the United States and the Constitution of the state. Speaking broadly, the government of the United States possesses no powers—except such as necessarily belong to it as an independent government—other than those which are conferred upon it by the federal Constitution. Speaking broadly, the Legislature of Alabama possesses all the legislative power which, under the federal Constitution, resides in the state, except where that power has expressly or *impliedly* been taken from it by the Constitution of the state. Speaking broadly, the Constitution of the United States is a *grant* of power. Speaking broadly, the Constitution of Alabama is a *limitation* upon the exercise of power.—*Miller v. Marx,* 55 Ala. 322.

1. "Municipal corporations are of a twofold character —the one *public* as regards the *state at large* in so far as they are *agents in government;* the other *private* in so far as they are to provide *local necessities* and conveniences for their own communities. And the fact that the Legislature has blended the *public* and *private* functions of a municipal corporation in *one* grant of power does not destroy the *clear* and *well-settled* distinction

between them. In its governmental character the corporation is made by the state a *local depository* of certain limited and prescribed political powers, *to be exercised for the good of the state.* In its *proprietary* character the theory is that the powers are not conferred chiefly from considerations connected with the government of the *state at large,* but for the *private* advantage of the compact community which is incorporated as a distinct legal personality or corporate individual."—20 Am. & Eng. Ency. Law (2d Ed.) 1131; Abbott on Municipal Corporations, vol. 1, § 7.

At common law the citizens of towns and cities were subjects of the crown, but their officers were not crown officers. Cities and towns elected their officers, and those officers enforced for them the customs and by-laws of their towns and cities. The citizens of London set great store upon electing their mayor: "Come what might they would have no king but the mayor."—1 Stubbs, Const. History, 674.

"The charters which conveyed to the townsmen these prescious privileges of freedom of trade, of justice, and of *internal* government had invariably to be *purchased* from the lord of the town, whether king, noble or abbot, and paid for in hard cash."—Taylor on the Origin and Growth of the English Constitution, 462.

While, in the sense that the government of England granted to a town, as a separate political entity, the privilege to exist, fixed its boundaries, and declared what, as a town, it was improper for it by ordinances to do, a town was a subordinate department of the English government, nevertheless, in that, either for a cash consideration or in some other way, the town people acquired the right to regulate, by their own town laws, their internal affairs and by officers selected by themselves, to collect the town's taxes and to administer

[State ex rel. Wilkinson, et al. v. Lane.]

justices under their valid town ordinances, an early distinction was drawn between a *town* officer and an officer of the crown, and between mere town affairs and the affairs of the crown or general government.

In truth, we do not see how, unless the historical development of municipal law is entirely discarded, it can be held upon sound reasoning that, in a state with a *constitutional* and statutory history like our own, a mere municipal officer can be held to be, within the meaning of our Constitution, an officer of the state. Town law found its origin in, and owed its development to, the principle of local self-government, the basic principle upon which all Teutonic governments rest. An Englishman might be proud to acknowledge himself the vassal of an English king, but when he claimed shelter under his own roof, he demanded that he should there be the "king in his own house." The dwellers in towns were perfectly willing to be the king's subjects, to obey his laws, and they were also willing that their towns should be the king's towns, but they demanded and received the right to govern the towns in which they lived, in accordance with their own regulations not in contravention of the general laws of the realm. The towns were the king's towns. Their inhabitants were the king's subjects, and they paid obedience to those who held office under the king; but the officers of a town were town officers, and the laws adopted by its people for their government as citizens of the town were town laws.

"No alien officer of any kind, save only the judges of the High Court, might cross the limits of their liberties; the sheriff of the shire, the bailiff of the hundred, the king's tax-gatherer or sergeant at arms, were alike shut out. The townsfolk themselves assessed their taxes, levied them in their own way, and paid them through

their own officers. They claimed broad rights of justice, whether by ancient custom or royal grant; criminals were brought before the mayor's court, and the town prison with its irons and its cage, the gallows at the gate or on the town common, testified to an authority which ended only with death.

"In all concerns of trade they exercised the widest powers, and bargained and negotiated and made laws as nations do on a grander scale to-day. They could covenant and confederate, buy and sell, deal and traffic after their own will; they could draw up formal treaties with other boroughs, and could admit them to or shut them out from all the privileges of their commerce; they might pass laws of protection or try experiments in free trade."—1 McQuillin, Mun. Corps. 102, note 81.

In this country, the town idea found its best early field for development in New England. The people of that section soon began to turn their attention to commerce and trade, and these lines of human activity tend to the establishment of villages, towns, and cities. The towns were there with well-developed town laws in the early history of the colonies. The difference between the laws of the English government and these town laws was well marked and thoroughly understood. The difference between the selection of the town officers and the duties which they had to perform, and an officer of the government of England, or its representative, the colony, and the duties which such officer had to perform, were also well defined and understood. When the people of a town *met* in their town house to pass laws for the regulation of the affairs of the town only and to select officers for the town only, they knew that, while they were the subjects of England and while their town was an English town, they were acting only for the town, that the laws which they passed were mere towns laws,

and that the officers selected by them held office *under them,* and that they were not officers of the government of England or of their colony. When, after the establishment of the federal government, in drafting their Constitutions, they referred in mere general terms to an officer of a state, they knew that they were not referring to mere *municipal officers.* In those days governments were simpler than they are to-day, for, to-day, a municipal officer frequently, by virtue of his office, owes one duty to his municipality and another to the state.

The same municipal *(town)* laws which were so well developed and so thoroughly understood in New England were the same municipal *(town)* laws which prevailed in Alabama when it was only a territory, when it adopted its various Constitutions as a state, and is the same municipal law which prevails to-day. It is that same municipal law which our ancestors brought with them from the parent country as a part of the English common law, and, in Alabama, a *mere* municipal officer is not, within the meaning of our Constitution, an officer of this state.—*Draper v. State,* 175 Ala. 547, 57 South. 772.

We have given the above subject full discussion, because, in the brief of counsel for appellant, the propriety of the decision of this court in *Draper v. State, supra,* is questioned,

2. Some man has said that *words* are *things.* At any rate, every word in a *statute* should *mean something.* When the meaning of words which are contained in a statute is plain and unambiguous, then courts, in construing such statute, should give to those words *that* meaning. Through the medium of words expression is given to the legislative will, and when that will is plainly and validly expressed, courts should give effect to that will.

[State ex rel. Wilkinson, et al. v. Lane.]

In the act entitled "An act to provide and create a commission form of municipal government and to establish same in all cities of Alabama which now have, or which may hereafter have, a population of as much as one hundred thousand people according to the last federal census," etc., approved March 31, 1911 (Gen. Acts 1911, p. 204), there is the following significant provision: "Said board of commissioners shall not have, possess or exercise any legislative, executive, judicial or administrative powers of the state or county, nor shall the offices held by them be state offices."

The quoted provision is plain and simple. All of the power of the state is embraced in its legislative, executive, judicial, and administrative departments, and the quoted provision cuts from the board of commissioners the exercise of any part of that power. The law has ever been that the municipal officers of a town or city shall not exercise any of the functions of the state government, unless, by statute, they are authorized to do so. Every power which is possessed by a municipality is a power which is delegated to it by the state, and every power which it possesses can, unless there is some constitutional limitation to the contrary, be taken from it by the state.

In the present instance the state had the power to declare that the board of commissioners should possess *only municipal* authority, and, having done so, they possess only *that* power and are municipal officers of the city of Birmingham merely. They possess "town" and not state authority.—*Dunn v. Court of County Revenues of Wilcox Co.,* 85 Ala. 144, 4 South. 661; *Mayor & Aldermen v. Allaire,* 14 Ala. 400; *Barnes v. District of Columbia,* 91 U. S. 540, 23 L. Ed. 440.

The mere fact that the Legislature *created* the office in question and provided that the Governor should ap-

point its first incumbent in no way affects the character of the office as a mere municipal office.

· In the case of *Barnes v. District of Columbia, supra,* the court said: "A municipal corporation may act through its mayor, through its common council, or its legislative department by whatsoever name called, its superintendent of streets, commissioner of highways, or board of public works, provided the act is within the province committed to its charge. Nor can it, in principle, be of the slightest consequence by what means these several officers are placed in their positions— whether they are elected by the people of the municipality, or appointed by the President or Governor. The people are the recognized source of all authority, state and municipal, and to this authority it must come at last, whether immediately or by a circuitous process. An *elected* mayor or an *appointed* mayor derives his authority to act from the same source, to wit, that of the Legislature. * * * Its legislative charter indicates its extent, and regulates the distribution of its powers as well as the manner of selecting and compensating its agents. The judges of the Supreme Court of a state may be appointed by the Governor with the consent of the Senate, or they may be elected by the people; but the power and duties of the judges are not affected by the manner of their selection. The mayor of a city may be elected by the people, or he may be appointed by the Governor with the consent of the Senate; but the slightest reflection will show that the powers of this officer, *his position as the chief agent and representative* of the city, are the *same* under either mode of appointment.' In other words, if a charter is, by the Legislature, created for a city, and in that charter a certain office for that city is created, and by that charter *only municipal* duties are attached to that office,

then it is *merely* a municipal office and its occupant *only* a municipal officer.

3. Section 42 of the Constitution declares that the powers of the government of the state of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, viz., the legislative, the executive, and the judicial. Section 43 of the Constitution provides that in the government of the state, except in the instances expressly directed or permitted by the Constitution, the legislative department shall never exercise the executive and judicial powers or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; and that the judicial shall never exercise the legislative and executive powers, or either of them.

A casual reading of these sections will disclose that they have no applicability, and were never intended to apply, to mere town or city governments or to mere town or city officials. It is but familiar history that frequently a mayor of a town in the state was its only judicial officer, and in many of our towns, that condition exists to-day. The mayor was the chief executive officer of the town and at the same time he was the only judicial officer of the town. The mere fact that he was a judicial officer in no way precluded him from serving the town as an executive officer.—*State v. Ure,* 91 Neb. 31, 135 N. W. 224. This being true, there can be no constitutional objection to attaching executive, administrative, or legislative duties to one of the members of the board under discussion, who is a judicial officer, if one of the members is a judicial officer.

4. The act to which we have above referred, and which was approved March 31, 1911 (Acts 1911, p. 204), contains the following other provision: "The office of com-

missioner the term of which under the provisions of this
act expires on the first Monday in November, 1915, is,
and shall be, a judicial office, and the commissioner ap-
pointed thereto, and hereafter elected thereto, is clothed
with full and ample power to administer justice under
the ordinances of said city only, and to administer
judicially the ordinances of said city only, to the legis-
lative and executive powers hereinabove conferred upon
the commissioner whose term of office expires as afore-
said, shall be an incident merely to said judicial office
and shall be confined only to municipal matters."

The charter of the city of Birmingham is fixed by the
above-quoted act and to the Legislature of Alabama it
owes its every grant of power.   The Legislature has
plenary power to alter, amend, withdraw, or repeal the
charter of a city or town and to create an entirely new
one.   "It may, in its discretion, add to or diminish its
corporate power and increase or remove limitations or
restrictions on its exercise."—*City Council of Mont-
gomery v. Shoemaker,* 51 Ala. 114; *State ex rel. Waring
v. Mayor, etc., of Mobile,* 24 Ala. 701; *Barnes v. District
of Columbia,* 91 U. S. 540, 23 L. Ed. 440.

The fact that the Legislature has seen fit, in the act
to which we have above referred, and which is, in re-
ality, the charter under which the city of Birmingham
now exists, to declare that a certain office created by
the act shall be a judicial office and that its occupant
shall exercise judicial functions, is a fact of which the
city has, under the law, no right to complain.   The city
is but a creature of legislative authority and its creator
had a right to declare what the powers of its various
officers should be.   While the Legislature has not, by a
mere ipse dixit, the power to declare that a *nonjudicial*
office is a judicial office, it has the right, however, to
say *what officer of a town or city* shall exercise the

judicial authority which, ex necessitate, resides in the town or city, and when it in fact confers that judicial authority upon a certain named officer, it may well declare that such an officer is a judicial officer. The city of Birmingham must look to the act in question and to the acts which it in effect amends, as the source of its every authority, except, of course, such implied authority as naturally and inherently belongs to all self-governing communities of the class to which that city belongs. This act, along with the other acts of the Legislature declaring what powers it shall and shall not possess, and through what officers it shall exercise those powers, is the *fundamental* law of the city and occupies to the city the same *relative* position that the *Constitution* of the state occupies to the people of the state. The act expressly calls into existence the office now under consideration and declares, simply and plainly, that the "commissioner appointed thereto, and hereafter elected thereto, is clothed with full and ample power to *administer justice under the ordinances of said city only,* and to administer *judicially* the *ordinances* of said city only."

If the Constitution of a state, ex proprio vigore, should create an office, and in the above terms, declare that the legal occupant of that office is clothed with full and ample power to administer justice under the laws of the state now in force or hereafter to be adopted and to administer judicially such laws, then that office would be, by virtue of the *Constitution itself,* a *judicial* office and its incumbent a judicial officer.

We can conceive of no town or city, even in the most primitive condition of society, which must not, ex necessitate, possess a need for town or city laws, and, as a necessary corollary, judicial officers to interpret and administer justice under those laws. In a modern city

of 100,000 inhabitants there must be judicial authority somewhere, and the act under consideration, in unmistakable language, lodges that authority in the officer the title to whose office is challenged by this proceeding. There is nothing in the act which in any way trespasses upon the power of the city, by proper ordinances, not inconsistent with the powers conferred upon said officer as a judicial officer of said city, to select *other* officers to act, also, as municipal judges; but the fact that the city possesses *this* power in no way affects the question in hand. While the city may select other men to act as municipal judges, it *cannot* deprive the officer in question of that power. Only the Legislature, which *created* the office, can exercise *that* authority. In truth, we know of no terms in which the Legislature could have more sweepingly conferred the judicial authority residing in a municipality upon a city officer, than in the instance now under consideration. Whether the present incumbent of that office has or has not held a court, tried a case, or in any way exercised the judicial authority which the act confers upon him can have no bearing upon the subject. Neither does the fact that the city has failed—if it has failed—to regulate the manner in which he shall exercise the authority with which he is clothed in any way affect the character of the office. This officer, under the terms of the act which created his office, is clothed with judicial authority, and no act of the city, so long as he remains such officer, can deprive him of that authority or change the character of the office which he occupies. Under the terms of the act he has the right to act as a judge of said city without regard to ordinances prescribing his duties. Neither do we think that the mere fact that the act in question fails to provide a method of appealing from the decisions can affect the judicial character of the

office. If he tries a case which is placed in the jurisdiction of a recorder, he is, while trying that case, a recorder, and his judgments possess the same force and effect as the judgment of any other recorder of the city while administering justice under the ordinances of said city only.

Section 150 of the Constitution of the state provides, among other things, that the Justices of the Supreme Court, chancellors, and the judges of the circuit and other courts of record, except probate courts, shall not hold any office, *except judicial offices,* of profit or trust under this state or the United States, or any other government, during the term for which they have been elected or appointed. While sections 42 and 43 of the Constitution to which we have already referred *divorce* the functions of the legislative, executive, and judicial departments of the *state* governments (except as otherwise provided in the Constitution) the one from the other, those section, as we have already said, have no applicability to *mere town or city officers,* or to mere *city or town governments.* A judicial officer of a town or city may exercise *both* legislative and executive functions, and the fact that he does so in no way destroys the character of his office as a judicial office. The above subdivision 150 of the Constitution does not prohibit the named judicial officers from holding judicial offices which have attached to them duties *other than* judicial duties, but only from holding offices *not* judicial.

It must be remembered that we are not dealing, in this opinion, with a *state* officer, but with a *municipal* officer *merely.* Undoubtedly the people of Alabama had the power in their Constitution to declare in what officers its judicial powers should reside and the courts over which they preside, the Legislature is powerless to abolish. "They constitute a co-ordinate and independ-

ent department of the government, and there is no other department of the government that can abolish them." —*State v. Sayre,* 118 Ala. 1, 24 South. 89; *Perkins v. Corbin,* 45 Ala. 118, 6 Am. Rep. 698.

The Legislature of Alabama in creating charters for municipalities have, except as expressly or impliedly restrained by the Constitution of the state, the same autocratic authority which is exercised by the people of the state when they go about adopting a state Constitution, and as the Legislature, in the exercise of lawful authority, has expressly declared that the incumbent of the office under consideration "is clothed with full and ample power to administer justice under the ordinances of said city only, and to administer judicially the ordinances of said city only," no council or other governing body of the city of Birmingham can take from him that power. The charter of the city of Birmingham is, as to all municipal matters and all municipal officers of said city, as binding upon it as is the Constitution of Alabama upon the officers and the people of the state. This officer has the power, under the charter of the city of Birmingham, "to administer justice under the ordinances of the city." The ordinances of the city are the *laws* of the city. Any person who is clothed with legal authority to *administer justice under the law* is a judicial officer.—*Settle v. Van Evrea,* 49 N. Y. 280; *Waldo v. Wallace,* 12 Ind. 509; *State v. Womack et al.,* 4 Wash. 19, 29 Pac. 939; *Reid v. Hood,* 2 Nott & McC. 168, 10 Am. Dec. 582.

The motive of the Legislature in declaring that the officer in question should possess the power "to administer justice under the ordinances of said city" is not a proper subject for judicial examination. "Neither can the court consider the policy or expediency of this en-

actment."—*State v. Berghoff, May, etc.,* 158 Ind. 349, 63 N. E. 717.

As the office in question is a judicial office of a municipality, we can see no reason why a circuit judge, under the very language of said section 150 of the Constitution, is prohibited from holding it "during the term for which he was elected and appointed" even if the office is, within the meaning of said section 150, an office under this state.

5. Much argument is had in this case, by counsel on both sides, as to whether the office now under consideration is an office under this state within the meaning of said section 150 of our present Constitution. As it is our opinion that the office under consideration is a mere municipal office, and that it is a judicial office, it is not necessary for us to determine this question.

6. The act under consideration is not a local act.— *State v. Joseph,* 175 Ala. 579, 57 South. 943.

7. The mere fact that the Governor of the state was given the power to appoint the first three members of the board of commissioners does not render the act unconstitutional.—*State ex rel. Waring v. Mayor, etc., of Mobile,* 24 Ala. 701; 4 Mayf. Dig. p. 265, § 29, Dillon on Mun. Corp. (5th Ed.) § 98; *Fox v. McDonald,* 101 Ala. 51, 13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98; *Barnes v. District of Columbia, supra.*

8. The oath which is prescribed by section 279 of the Constitution applies only to *state,* and not to mere municipal, officers.

From what we have above said, it is evident that we are of the opinion that there is no error in the record.

Let the judgment of the court below be affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.