# State *ex rel.* Little v. Foster.

*Quo Warranto Proceedings.*

1. *Information in the nature of quo warranto; burden of proof.* In proceedings by information in the nature of *quo warranto,* under the statute (Code, § 3426), where the respondent admits that he is holding the office and exercising its duties, the burden is upon him to show by what authority he holds the office and that he is in the rightful exercise of its duties and powers.

2. *University of Alabama; term of trustee.*—Under the provisions of the constitution relating to the appointment and terms of office of the trustees of the University of Alabama, (Const., Art. XIII, § 9), the duration of the term of said trustees is fixed at six years for all who may be appointed to fill terms

after the expiration of the term of the first incumbent.

3  *Same; same.*—The requirement in section 9, Article XIII of the constitution of the classification of the board of trustees of the university into three classes, and that the seats of the respective classes shall be vacated respectively at two, four and six years from the date of their appointment, is, as shown by the language employed, for the purpose of providing that one-third of the trustees may be chosen bi-ennially; and this being accomplished during the tenure of the trustees first appointed, such provision becomes *functus officio*, and the terms of the succeeding members of the board is fixed at six years by the preceding sentence in said section.

4.  *Same; same.*—Under the provisions of section 9 of Article XIII of the Constitution, the trustees of the University of Alabama must be appointed by the Governor by and with the advice and consent of the senate; and, therefore, an appointment made by the Governor, at the expiration of a term of one of the trustees, without the advice and consent of the senate, is unauthorized and void; and this is true, though such term may have expired at a time when the General Assembly was not in session.

5.  *Same; construction of statute as to filling vacancies in office of trustee.*—The statute which authorizes the Governor to fill vacancies occurring in the office of trustee of the University of Alabama, (Code, § 3675), does not apply to vacancies that may arise by reason of the expiration of a term; but confers the authority to fill a vacancy occurring during the term of an incumbent, by death, removal or resignation.

APPEAL from the Circuit Court of Tuscaloosa.

Heard before the Hon. S. H. SPROTT.

This was a proceeding by information in the nature of *quo warranto*, and was filed in the circuit court of Tuscaloosa by the appellant, the State of Alabama on the relation of John Little, against the appellee, Henry B. Foster; and sought to have said Foster adjudged guilty of usurping and unlawfully holding and exercising the duties of the office of a member of the Board of Trustees of the University, and prayed that he be excluded from said office. The facts of the case are sufficiently stated in the opinion.

On the submission of the cause, a judgment was rendered denying the relief prayed for and adjudging that Henry B. Foster was not wrongfully exercising his

[State *ex rel.* Little v. Foster.]

duties of the office of trustee of the University of Alabama. From this judgment the relator appeals, and assigns the rendition thereof as error.

VANDEGRAAFF & VERNER, for appellant.—An information in the nature of *quo warranto* is the proper remedy to question the authority of the respondent to exercises the duties of the office of a member of the Board of Trustees.—Code, § 3420; *Montgomery v. State,* 107 Ala. 372.

A valid appointment of trustee of the University can note be made by the Governor acting alone without the advice and consent of the senate.—Const., Art. XIII, § 9.                                  z

The authority to fill vacancies confers no judicial power, and the existing title of an incumbent can not be extinguished or affected by the *ex parte* judgment of the executive that the office is vacant.—19 Am. & Eng. Ency. Law, 435; *Hill v. State,* 1 Ala. 559; *Ex parte Harris,* 52 Ala. 90; *Bruner v. Bryan,* 50 Ala. 527; *Thompson v. Holt,* 52 Ala. 491.

There was no vacancy in the office of trustee as contemplated by the statute (Code, § 3675). The appointment by the Governor was unauthorized 'and was contrary to the express provisions of the constitution. The effect of an executive appointment, and the rights acquired by the appointment are, therefore, dependent upon whether or not the office was without an incumbent, lawfully entitled to continue therein, at the time the appointment was made.—*Ex rel. Carson v. Harrison,* 16 N. E. Rep. 385; *Tulcy v. State,* 11 Ind. 500; *Trustees v. Hill,* 6 Cow. 23; *People v. Bull,* 46 N. Y. 57; 1 Dillon Munic. Corp., § 219; *Gosman v. State,* 113 Ind. 203; *People v. Henderson,* 35 Pac. Rep. 523; *Carr v. Wilson,* 32 W. Va. 419; *State ex rel. Howe,* 18 Am. Rep. 321; *People ex rel. Parsons,* 28 Pac. Rep. 831.

FOSTER & OLIVER, E. R. RUSSELL and A. B. MC-EACHIN, *contra.*—The expiration of Dr. Little's term on March 1, 1900, vacated the office. Section 9, Art. XIII of the constitution; Code, § 374; Acts, 1875-76, 268;

[State ex rel. Little v. Foster.]

*Bondurant v. Buford,* 1 Ala. 359; *Andress v. Broughton,* 21 Ala. 204; *Cuthbert v. Huggins,* 21 Ala. 349; *Cary v. State,* 76 Ala. 78; *City Council v. Hughes,* 65 Ala. 207; *Lane v. Kolb,* 92 Ala. 636; 19 Am. & Eng. Ency. Law, 433-4 and notes; *Ryland v. Pinkerman,* 22 L. R. A. 653; *Badger v. U. S.* 93 U. S. 601; *State v. Murphy,* 13 So. Rep. 705; *State v. Cocke,* 54 Texas 482; *Attorney-General v. Burnham,* 61 N. H. 594; *Johnson v. Mann,* 77 Va. 265; *State v. Kubhl,* 17 Atlantic Rep. 102; Senate Journal, 1894-95, pp. 178-9; Code, § 3152.

Contemporaneous legislative construction of the constitution, long concurred in, will be followed by the courts, unless clearly in conflict with the plain intention of the constitution.—*Parsons v. U. S.,* 167 U. S. 324; *Bruce v. Schuyler,* 46 Am. Dec. 447; *Nicholas v. Bridgeport,* 60 Am. Dec. 636.

Legislative enactments are always presumed to be constitutional, and sentence of nullity will not be pronounced against them unless it clearly appears that they offend the constitution.—*Fox v. McDonald,* 101 Ala. 51; *Winter v. Sayre,* 118 Ala. 35.

Constitutional provisions are to be expounded in the light of the conditions existing at the time of their adoption.—*Fox v. McDonald,* 101 Ala. 41.

The power to fill the vacancy by appointment during the recess of the senate was validly conferred on the Governor.—Acts, 1875-76, § 9, p. 271; Code, § 3674; *Fox v. McDonald,* 101 Ala. 51; *State v. George,* 16 L. R. A. 737.

TYSON, J.—This is an information in the nature of a *quo warranto* brought on the relation of appellant against the defendant for the purpose of having adjudged the latter's right and title to the office of Trustee of the University of Alabama. The facts are agreed upon. They appear to be these: The relator was appointed by the Governor, with the advice and consent of the senate, on the 21st day of February, 1893, trustee to fill a vacancy caused by the resignation of James E. Webb for the term ending March 1, 1894. On the 1st day of March, 1894, he was reappointed by the Gov-

[State *ex rel.* Little v. Foster.]

ernor during a recess of the senate but did not qualify, and on December 1st, 1894, the Governor sent to the Senate the following message: "I respectfully submit for your advice and consent the following nominations: For trustee of the University of Alabama of the third class, for term ending March 1st, 1900, R. B. Rhett, of the 8th Congressional District; John Little, of the 6th Congressional District. These nominations are made to fill appointments made during the recess." This nomination was confirmed by the senate and the relator entered upon the discharge of his duties, after taking the oath of office, which he continued to discharge until the 14th day of June, 1900, when the defendant was appointed by the Governor, without the advice and consent of the Senate (the General Assembly not being in session), to fill what the Governor assumed to be a vacancy in the office, as successor of the relator. The defendant on the day of his appointment qualified and entered upon the discharge of the duties of the office and was exercising the functions and duties thereof when this proceeding was instituted.

Section 9 of Art. XIII of the constitution, after providing for the management and control of the University by a Board of Trustees, provides for the appointment of the trustees as follows: "Said trustees shall be appointed by the Governor, by and with the advice and consent of the senate, and shall hold office for a term of six years, and until their successors shall be appointed and qualified. After the first appointment [the] board shall be divided into three classes, as nearly equal as may be. The seats of the first class shall be vacated at the expiration of two years, and those of the second class in four years, and those of the third class at the end of six years, from the date of appointment, so that one third may be chosen biennially."

At the first session of the General Assembly after the adoption of the constitution, the act of March 1, 1876, (Acts, 1875-76, p. 268) was passed which now, with slight modifications, constitutes sections 3667 *et seq.* of the Code. One of the purposes of this act was to

effectuate and make operative that part of this constitutional provision requiring the Board of Trustees to be classified. Under it certain persons as trustees, therein named, were constituted a body corporate, under the name and style of "The Board of Trustees of the University of Alabama." Each of the Congressional districts, there being eight of them at that date, were represented on the board, by one person, except the sixth, which had two trustees. These trustees were divided into three classes as follows: The trustees from the first, fourth and the one determined by lot from the sixth, constituted the first class; those from the second, fifth and seventh, the second class, and those from the third and eighth and one from the sixth, the third class. After the creation of the ninth Congressional district, the trustee for that one was placed in the second class. The purpose of the requirement in the constitution of the classification of the board into three classes and that the first appointees shall vacate their seats, respectively, at the expiration of two, four and six years, from the date of their appointment, is disclosed. To use the language employed, it was, "that one-third may be chosen biennially." At the expiration of two years, the successor in office of that class was entitled to hold for six years; and likewise was the successor in the second and third classes at the expiration of four and six years, respectively. By this process the members of each succeeding board were given a term of six years as prescribed by the phrase immediately preceding the one we are now considering and the system of selecting one-third of the members of the board biennially was perfected. This same process was employed in the Federal constitution, with respect to the classification of the first United States senators elected.—Art. I, Sec. 3 of Const. of U. S. It has never been doubted that the terms of the succeeding senators were each for six years, without reference to whether they were of the first, second or third class. Nor has it ever been held or for that matter hinted, that the system has not accomplished the purposes for which it was intended. And indeed the result sought to be accomplished, of selecting one-third of the members of the

board biennially, is inevitable, except only in case of an irreconcilable disagreement between the senate and the Governor as to who is a fit and proper person to fill the office; a contingency not likely to arise, but should it happen, there would simply be, unfortunately, a *casus omissus.* As under the Federal constitution, should the General Assembly refuse or fail to elect a senator, the State would be short one representative in Congress, a contingency which has happened, but which has not been regarded as being within the competency of the legislative branch of the government, or of the courts, to remedy. It is of no consequence, that the system providing for the classification of the board of trustees, is found in a constitution which must be construed as a limitation upon the powers of the legisture and the system providing for the classification of the first senators elected is found in a constitution which must be construed as a grant of power to Congress, for the obvious reason that the provisions in both with respect to the tenure of office, the mode of selecting its incubent, are alike obligatory and cannot be disobeyed.

The defendant admitting by his answer that he is exercising the functions of the office, and asserting that he is the lawful incumbent thereof, the burden is upon him to establish his right of title to it. This is the prime question to be determined, notwithstanding the court may, should it determine it against him, also determine the right of the party claiming it.—Code, § 3429; *Montgomery v. The State,* 107 Ala. 372.

The title of the defendant is predicated upon the appointment of the Governor without the advice and consent of the senate, as successor of the relator upon the assumption that the latter's term had expired, on March 1, 1900. Conceding this assumption and also conceding as contended by defendant (but we express no opinion on this point) that the hold-over clause was no part of the relator's term, the question nevertheless is, could the appointment be made in any other mode than the one prescribed by the constitution? Or to propound the question in another form, does the constitution prescribe.

the mode by which the appointment must be made?    If
the Governor was without warrant of law to make it,
it is of necessity void.    He possesses no such power by
reason of being the chief executive of the State.    It
must be conferred upon him expressly by the organic law
or by statute.    Speaking to this point, this court said,
in *Fox v. McDonald*, 101 Ala. 71:    "With us, the Gov-
ernor has no prerogatives.    He must find warrant in the
written law for his every official act.    He has no more
power to appoint officers, when not expressly conferred,
than has the president of the senate, who is of the legis-
lative, or the chief justice of this court, who is of the
judicial department; and when we go back to our con-
stitution and laws in this State, from the beginning of
the State government to the present, we find it has been
the policy to distribute this appointing power among the
several departments of the State.    We need not specify.
The instances will readily occur to the minds of those
familiar with the constitutions and laws.    It may be
true, that the Governor has been invested with the great-
est share of this power, but no principle or policy has
been declared that the power inherently belongs to him."
Adverting to the question propounded above, the an-
swer to it must be found in the construction of the clause
of the constitution which we have quoted in the first
part of this opinion.    The constitutional provision not
only creates the office of trustee, but prescribes the mode
of filling it and the length of the term.    The duration
of the term is fixed at six years for all who may be ap-
pointed to fill terms after the expiration of the terms
of the first incumbents.    The mode prescribed for the
appointment of incumbents to fill these terms is by the
Governor by and with the advice and consent of the
senate.    The power of appointment here conferred is not
upon the Governor alone.    It is plainly conferred upon
him and the senate jointly.    The advice and consent
of the senate is as much an essential to the due execu-
tion of the power as is the nomination by the Governor.
The plain requirement from the language is, that both
must be consulted, that both must consent, and that
both must exercise the power reposed in them jointly.
The senate can no more make the appointment, without

11

the Governor, than the Governor can make it without the senate. There is, therefore, no warrant to be found in this constitutional provision, either express or implied, for the Governor to make the appointment of a successor of an incumbent whose term had expired during the recess of the senate. And unless it is conferred by this clause of the constitution, it does not and cannot exist. There is no pretense that there is any other clause of the constitution which remotely or otherwise confers such authority. The theory seems to be that the clause under consideration makes no provision for the filling of vacancies; in other words, the contention of defendant is, when the term of an incumbent expires, there is a vacancy, and if the expiration occurs during a recess of the legislature, it is within the competency of the General Assembly, to make provision for the filling of it, and that such provision was made by the act of 1876, now consituting in part section 3675 of the Code. The contention is unsound, unless it be held, which is not contended for, that the clause of the constitution now under consideration was *functus officio* after the expiration of the term of the first incumbents. For if it is obligatory as prescriptive and exclusive of the manner by which each succeeding term is to be filled, an appointment made in any other mode than the one prescribed, would be unwarranted; and this is true, notwithstanding legislative enactments may prescribe a different mode. For the legislative department of the government can no more violate a mandate of the constitution, than can any other department. That this portion of the clause of the constitutional provision is self-executing in so far as it establishes the office, prescribes the mode of filling it at the expiration of a term and the duration of the term, is beyond cavil.—Cooley's Const. Lim. 99. It is plain and unambiguous, and where this is the case, the framers of the constitution "should be intended to mean what they have plainly expressed and consequently no room is left for construction. Possible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere."—Cooley's Const. Lim.

69, 70.   The framers of the constitution "must be under-
stood to have intended what they said.   *    *    *   We
can only learn what they intended, from what they
have said.   It is theirs to command, ours to obey. When
their language is plain, no discretion is left to us.   We
have no right to stray into the mazes of conjecture, or
to search for imaginary purposes."—*The State v. Mc-
Gough,* 118 Ala. 166.   If we may be pardoned for repe-
tition, the language is "said trustees shall be appointed,"
etc.; not the first trustees, but all who may be appointed
to fill succeeding terms. Obviously this is so, for the reas-
on that the framers of the constitution were manifestly
undertaking to provide for a stable and permanent or-
ganization for the management and control of the Uni-
versity. If the management of this institution of learning
was of so great importance as to attract the attention of
the framers of the constitution and to impress them
with the necessity of incorporating in the organic law
of the State, the provision establishing the board of
trustees, prescribing their mode of appointment, etc., it
would require the wildest flight of the imagination, to
conjure the construction, that they only intended to deal
with the tenure of the first incumbents and not of those
who may become members of succeeding boards.   It
could be said with as much plausibility that the require-
ments of the constitution that certain State officers
should be elected by the people were *functus officio* after
the first incumbents were elected, and that after the
expiration of their terms, the General Assembly might
prescribe any other mode of filling them.   The conclusion
is irresistible, that the clause of the constitution ap-
plies to all appointments made to fill vacancies created
at the expiration of a term, and that it is mandatory,
prescriptive and exclusive.   Any other construction
would put it in the power of those whose duty it is to
execute this clause of the constitution, not only to evade
it, but to practically destroy it, and to render uncer-
tain and unstable our written constitution.

   Applying these principles to the facts of this case,
the defendant's right to the office cannot be sustained
for the reason that the Governor was without warrant
of law to appoint him.   As we judicially know that de-

fendant has, since this proceeding was instituted, been legally appointed as successor to the relator, it is unnecessary to adjudge the latter's rights in the premises. However, in conclusion, it is not amiss to say that the act of 1876 and section 3675 of the Code was not intended to apply to vacancies created by the expiration of a term. This, as we have shown, has been provided for by the constitution. There was, therefore, no necessity for legislative action and none, as we have shown, could legally exist which in anywise contravened the provision of the constitution. These enactments have a field of operation in harmony with the constitutional provision and when given that construction aid in effectuating the purposes intended to be accomplished by it. They were intended to confer the authority to fill a vacancy, occurring during the term of an incumbent—a contingency not provided for by the constitution.

Reversed and remanded.

McCLELLAN, C. J., and DOWDELL, J., not sitting.