186 So. 163

**HALE v. STATE ex rel. ALGEE et al.**
**6 Div. 329.**

Supreme Court of Alabama.

Jan. 12, 1939.

Rehearing Denied Feb. 9, 1939.

Mullins, Deramus & Stuart, of Birmingham, for appellant.

Lange, Simpson & Brantley and C. H. Peay, all of Birmingham, for appellees.

KNIGHT, Justice.

This is a proceeding in the nature of a quo warranto brought by the State on relation of R. D. Algee and others against A. B. Hale, appellant here.

It is charged in the information that the defendant on or about the 7th day of February, 1937, "usurped, intruded into and now unlawfully holds or exercises the functions of a public, civil office in Jefferson County, Alabama, sometimes called Official Court Reporter for the civil division of the circuit court, * * * and that the defendant has continuously from towit, February 7th, 1937, to the date of this petition, usurped, intruded into and unlawfully held said alleged office and enjoyed the emoluments thereof."

In the second paragraph of the petition it is charged "that there is no valid law authorizing said office or if said office lawfully exists, defendant unlawfully intruded into and now unlawfully holds the same."

The respondent interposed a demurrer to the information, assigning a number of grounds, but the ground here argued for error takes the point that the information, in paragraph 3, avers "That there is no valid law authorizing said office, while in the same paragraph it also avers that if said office lawfully exists, defendant unlawfully intruded into and unlawfully holds the same."

The respondent concedes that it is permissible in an information, or petition for a writ of quo warranto, for the petitioner to attack the respondent's right to the office, and at the same time attack the validity of the statute creating the office, but he insists that this cannot be done in the same count or paragraph.

We have repeatedly held that an information in cases of this sort is sufficient, "if it avers in general terms that the respondent usurps, intrudes into, and unlawfully holds a designated public office." Sharp v. State ex rel. Elliott, 217 Ala. 265, 115 So. 392, 393; Jackson v. State ex rel. 143 Ala. 145, 42 So. 61; Frost v. State ex rel., 153 Ala. 654, 45 So. 203; Longshore v. State ex rel., 200 Ala. 267, 76 So. 33.

And in the case of State ex rel. Garrett et al. v. Torbert, 200 Ala. 663, 77 So. 37, which was a quo warranto proceeding, this Court held that, while there was no specific prayer to determine whether or not there existed such an office as the County Court of Hale County, yet a determination of that question was involved in the determination of the other questions, viz., whether the respondent was ex officio judge of the court, and, at the same time, clerk thereof.

Therefore, when one is called upon in quo warranto proceedings to show by what right he exercises, or assumes to exercise, the function of a public office, he must show that there is a de jure office as well as a lawful holding thereof by him, for it is axiomatic that there can be no de jure officer, if there is no de jure office. Jackson v. State ex rel., supra; State ex rel. Little v. Foster, 130 Ala. 154, 30 So. 477.

We, therefore, hold that there was no error in overruling the respondent's demurrer, as for any grounds assigned, to the information.

The respondent has attempted to justify his holding by showing that the particular office was created by a valid Act of the Legislature of Alabama passed at the Session of 1901, and approved by the Governor on March 4, 1901, General & Local Acts, 1900–01, p. 2255, and that he was duly and legally appointed to said office by the Judges of the Circuit Court of Jefferson County on February 6, 1937, and that he duly qualified as such Court Reporter on towit February 11th, thereafter.

The cause was tried by the court without a jury, and at the conclusion of the trial the court held that the respondent had not received an appointment in writing to the office as required by law, that he was without legal right to said office, and thereupon entered an order of ouster against him.

The court held that it was unnecessary for it to pass upon the question of whether the office of Court Reporter for Jefferson County still existed, because of its findings against respondent on the second question, viz., that the respondent had not "received an appointment in writing as required by said Act." We shall, therefore, confine this opinion to the one question decided by the trial court.

It appears that the Legislature of Alabama at the Session of 1901 passed an Act, creating the office of "official stenographer of Jefferson County," defining his duties, and providing for his appointment, and fixing his term of office.

Section 1 of the Act provides: "That there be and is hereby created the office of 'official stenographer of Jefferson county,' which official stenographer shall be appointed by the judge of the circuit court of the tenth judicial circuit, together with the judges of the city court of Birmingham. Said judges shall make said appointment in writing immediately after the passage of this act and every six years thereafter. And the person so appointed shall hold his office for six years from the date of qualifying as hereinafter prescribed, and until his successor shall be appointed and qualify."

Section 2 of the Act provides: "That the official stenographer as so appointed shall take the oath of office prescribed by the constitution of this State, and also the following oath: I, ———, do solemnly swear that I will well and truly report, preserve and transcribe all matters which it shall become my duty to report, preserve and transcribe as official stenographer of Jefferson county, faithfully and truly and without prejudice or partiality to the best of my ability, so help me God. Which oath shall be subscribed by the person appointed, and filed together with the appointment, in the office of the clerk of the circuit court of said county, and be entered on the minutes of said court. And a copy of said appointment, certified by the clerk of said court shall be evidence of the official character of said stenographer."

The respondent offered testimony tending to show that the judges of the circuit court held meetings once a month for the purpose of discussing "matters of policy for the court and things of that kind that might bring about an improvement in the handling of the public business." The evidence further tended to show that the clerk of the circuit court attended these meetings, that he was secretary of the judges, and

kept "the minutes of the judges' meetings, and reduced them to writing for the judges, and has charge of, and keep these minutes." For this purpose he, the clerk, has a separate book called the "Minutes of the Judges' Meetings." At one point in the testimony of the clerk of the circuit court, this official testified that the record kept by him of the proceedings of the circuit judges, when assembled in their monthly meetings, was his "personal record," and was kept by him in his private office, yet the evidence on the whole shows that, while this record was not a public record, it was a record made by the secretary for the judges, and not simply a personal record.

The respondent introduced in evidence the Minutes of the Judges' Monthly Meeting held on February 6, 1937, as the same appear in book called "Minutes of the Judges' Meeting." The following is a copy of the minutes of said meeting:

"Minutes
"Circuit Court Judges of the Tenth
Judicial Circuit
Regular Monthly Meeting
February 6, 1937
Saturday

"The Judges of the Circuit Court of the Tenth Judicial Circuit of Alabama met in the Courthouse at Birmingham, Alabama, on the 6th day of February, 1937 at 9:30 A. M.

"The meeting was called to order by the Honorable J. Fritz Thompson, Presiding Judge. The following Judges were present, viz: Judge J. Fritz Thompson, Richard V. Evans, E. M. Creel, Robert J. Wheeler, C. B. Smith, John Denson, J. Edgar Bowron, Gardner Goodwyn (from Bessemer), J. Q. Smith and Leigh M. Clark.

"The matter of consolidated cases which had been referred to Judge McElroy to be re-written in the meeting of January 9th was read and Sections, (a), (b), (c); (d), and (e) of Rule 50-A were adopted. Rule 50-B was postponed on account of the absence of Judge McElroy.

"T. W. McRee and A. B. Hale were nominated for the place of official Court Stenographer. A secret ballot was taken, O. L. Andrews, Clerk, and Judge Bowron were selected to act as tellers; the vote was found to stand 4 for McRee and 5 for Hale. Judge Bowron moved that Hale's election be made unanimous, seconded by Judge Wheeler, after which Presiding Judge Thompson declared A. B. Hale officially elected official Court Reporter.

"Circuit Clerk Andrews asked for a report on the consolidation of the Criminal and Civil Clerk's offices after which a resolution was passed asking the Clerk to leave the offices referred to as they are now, copy of this resolution to be sent to the Personnel Director.

"(Signed)   O. L. Andrews,
"Osa L. Andrews, Clerk.
"Approved by:
"―――――――
"Presiding Judge
"Page Sec.
"287―819P.                                      ".

This minute was never signed by the Judges, nor by any one of them, nor was it ever entered upon the Minutes of the Circuit Court. It further appears that no appointment in writing of the respondent was ever made and signed by the Judges, unless the above memorandum made by the Secretary at the meeting on February 6, 1937, can be treated as, and held to be, an appointment in writing.

Judge J. Fritz Thompson, the presiding judge of the Circuit Court of Jefferson County, Alabama, was called as a witness, and examined by the respondent. Judge Thompson testified in substance: That he presided at the meeting of the Judges of the Circuit Court on February 6, 1937, at which the matter of the election, or appointment, or selection of an official stenographer of said county was considered; that a vote was had by the judges in "that regular meeting" on the appointment or selection of an official stenographer; that A. B. Hale, the respondent was elected. That after the first ballot was had a motion was made to make Hale's selection unanimous; which motion prevailed, and that said Hale was unanimously elected official stenographer for Jefferson County by the Judges of the Circuit Court of Jefferson County.

Judge Thompson further testified that all of the judges of the circuit court were not present at the stated meeting, that one of them was absent. That at the regular meeting of the judges, they acted on business matters such as "the appointment of an official stenographer for the court, or the appointment of inferior court judges."

From the foregoing, there is no doubt but that all the judges of the Circuit Court of Jefferson County, save one absent judge, voted to appoint the respondent official stenographer for Jefferson County. But, in view of the act conferring the power to appoint in writing a stenographer for Jef-

ferson County, was the above action a sufficient compliance with the power of appointment? It will be observed that the act not only requires that the appointment must be made in writing, but that this appointment, and the oath of office required of the stenographer, shall be filed in the office of the clerk of the circuit court, and be entered upon the minutes of the court. While it would seem that no formal commission, as in cases of state and county officials elected by the people, or appointed by the governor to fill vacancies therein, is required, yet a written appointment, or appointment in writing, is required, and when so made and delivered, it, the appointment in writing, becomes by force of the statute, the commission of the official stenographer, and the sole evidence of his official character.

There are many, and cogent reasons why the statute requires that the appointment of a public officer should be made in writing, and that the writing evidencing such appointment should be recorded, and subject to inspection at all times by the public. As observed by the Court of Appeals of New York, in the case of People ex rel. Babcock et al. v. John T. Murray et al., 70 N.Y. 521: "The Constitution and the laws of the State create or provide for the creation of all offices, and prescribe the mode of election or appointment, the terms and duration of office, as well as regulate the duties and emoluments. Offices in certain cases, may be for a term of years, during the pleasure of the appointing power, or during good behavior; but whatever may be the term or tenure of office, the appointment must be in conformity with the statutes of the State. An appointment in the general sense of the term may be by deed or in writing without seal or verbal, depending upon the subject-matter of the appointment and the terms of the authority under which it is made. But an appointment to office by the person or persons having authority therefor, as distinguished from an election, can only be made verbally, and without writing when permitted by the terms of the statute conferring the power. Affecting the public, and not merely private rights, and being done under the authority of the sovereign power and not under individual authority, it should be authenticated in a way that the public may know when and in what manner the duty has been performed.

"A right to an office by election may be perfect when the votes have been cast and canvassed, and the result certified according to law, but then a commission or the duly authenticated certificate of the result as the substitute for a commission is the highest and best evidence of the title. An appointment by the executive by and with the advice and consent of the Senate, is only evidenced by the commission; as the executive may decline to make the appointment and to issue the commission notwithstanding the advice and consent of the Senate. (2 Story on Const., § 1546.)

"It is quite evident that no verbal declaration of the executive would perfect the appointment. The nomination is but the naming of the person as suitable to be appointed; the action of the Senate is merely the advice and consent of that body that the appointment be made; and the appointment is then made and is evidenced by the commission. The act of signing the commission completes the appointment as well as perpetuates the evidence of it. From that time only is the act irrevocable. (1 R.S., 117, §§ 11–14; Marbury v. Madison, 1 Cranch 137 [2 L.Ed. 60].)"

The appointment to office becomes complete when, and only when, the last act required of the appointing power has been performed. This seems to be an universal rule. Mechem on Public Officers, Sec. 114, p. 46; Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60; Draper v. State, 175 Ala. 547, 57 So. 772; Ann.Cas.1914D, 301; State v. Barbour, 53 Conn. 76, 22 A. 686, 55 Am.Rep. 65; 46 C.J. § 69, p. 954; Witherspoon v. State, 138 Miss. 310, 103 So. 134.

In the case of Conger v. Thomas W. Gilmer, 32 Cal. 75, it was held that an appointment to office by a board of supervisors did not become complete, although the board had voted to elect a certain person to office, until the appointee had received a certificate of his appointment, duly signed by the proper officers.

It seems, also, to be well settled that if the act creating the office provides how it shall be filled, it must be filled in that manner. 22 R.C.L. § 74, p. 426.

Equally well settled is the rule that the appointing power, in making the appointment, must comply with all the formalities prescribed by the law which confers the power, in order that the appoint-

ment be valid. 46 C.J. § 62 (d), p. 950; Schenck v. Peay, 21 Fed.Cas. p. 672, No. 12,451; 1 Dill. 267; Benson v. People, 10 Colo.App. 175, 50 P. 212; Wells v. Com., 195 Ky. 754, 243 S.W. 1032; Elledge v. Wharton, 89 S.C. 113, 71 S.E. 657; 29 Cyc. p. 137, § 5.

While, no doubt, the monthly meetings of the judges of the Circuit Court of Jefferson County were and are greatly beneficial, and exceedingly helpful in many ways, yet such meetings are, so to speak, extra-judicial, and "off the record."

 It was proper, of course, while these judges were present at the meeting of February 6, 1937, to ascertain, by a vote among themselves, their choice of an official stenographer for the courts, yet any expression of their choice, not reduced to writing and signed by the judges, would fall far short of meeting the positive requirements of the statute. The statute contemplates an appointment in writing, signed by the judges, and this, when done, gives authenticity to their act. Not only does it require that this shall be done, but it also requires that the paper evidencing the appointment shall be spread upon the minutes of the court, along with the oath of office taken by the appointee. Acts 1900–01, p. 2255. We say this, for as a great judge once said, "words are things. At any rate, every word in a statute should mean something. When the meaning of words which are contained in a statute is plain and unambiguous, then courts, in construing such statute, should give those words that meaning. Through the medium of words expression is given to the legislative will, and when that will is plainly and validly expressed, courts should give effect to that will." State ex rel. Wilkinson v. Lane, 181 Ala. 646, 62 So. 31, 33.

No doubt the formalities required by the statute were written into it, that the public who may have dealings with the stenographer may know who the appointee is, and how and in what manner his appointment was made. People ex rel. Jeptha W. Babcock et al. v. John T. Murray et al., 70 N.Y. 521.

We are of the opinion, and so hold, that the respondent has not shown a valid title to the office, and that the court a quo committed no error in entering a judgment of ouster.

We deem it proper here to state, however, that the evidence conclusively shows that the respondent was and is a de facto officer, in possession of a de jure office, exercising the functions of the office, and that, therefore, his acts, until ousted from said office, must be held to be legal and binding.

Of course, the judges of said court could have rendered these proceedings moot had they, after the information was filed, given the respondent an appointment in writing as the statute contemplates and requires, and that course is still open. State ex rel. Little v. Foster, 130 Ala. 154, 30 So. 477.

The judgment of the circuit court is without error, and will be here affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.