512

64 So.2d 75

## STATE v. GIBSON.
### 6 Div. 431.

Supreme Court of Alabama.
March 19, 1953.

Si Garrett, Atty. Gen., H. Grady Tiller and Wm. H. Burton, Jr., Asst. Attys. Gen., for appellant.

Gibson, Hewitt & Gibson, Birmingham, for appellee.

SIMPSON, Justice.

This appeal brings under review § 374 of Alabama's income tax law, as amended by General Acts 1945, which provides:

"The salaries, fees, commissions, or other income of officers or agents of the United States or its agencies and instrumentalities or its contractees, received from the United States or from its agencies and instrumentalities, shall be subject to income taxes levied by the state of Alabama as other income is taxed, but without discrimination, and only to the same extent, and in the same manner other income is taxed, insofar as the state of Alabama may be constitutionally or legally authorized to tax such income; *provided, however, that money paid by the United States to a person as compensation for military service rendered by him to the United States at or during a time when the United States is at war with a foreign state or within six months after the termination of such a war shall not be subject to income taxes levied by the state of Alabama for the calendar year 1945*

*or any subsequent year."* (Emphasis supplied.) Code 1940, 1951 Cum. Pocket Part, Vol. 7, p. 200, Title 51.

The question is whether the pay appellee received as an officer in the organized Naval Reserve Corps of the United States for the year 1949 was taxable, in view of the italicized provision, supra. The trial court denied liability for the tax and the State has appealed.

Appellant contends the provision is not applicable (1) because at that time (1949) the United States was not "at war"; that the proviso has reference only to "an actual shooting war or actual hostilities"; and (2) because persons receiving pay for services in the organized Naval Reserve Corps until they are called into active duty cannot claim the benefit of the proviso. We think the trial court resolved the questions correctly and in line with competent and well-reasoned authority.

That the United States was "at war" with a foreign state in 1949 seems clear to us. Though the actual hostilities between this country and our enemies ceased in 1945, we were still at war. Our armies, navies, and air forces, exercising our war power, were still abroad and no peace terms had been made with our enemies. This status prevailed with respect to Japan until the treaty of peace was signed September 8, 1951, and with respect to Germany until peace was proclaimed by the President after a joint resolution passed by Congress October 19, 1951.

Appellant rests its first proposition on the contention that the President's proclamation of the cessation of hostilities effective on December 31, 1946, terminated the "war." But this position is untenable. On the contrary, this document specifically proclaimed that "a state of war still exists." Presidential Proclamation 2714, 12 Fed. Reg. 1; 50 U.S.C.A. Appendix, § 601; Woods v. Cloyd W. Miller Co., infra; Ludecke v. Watkins, infra. This proclamation set a more or less arbitrary date, largely in order to fix a termination date for certain statutes.

But the proclamation did not terminate the war. Arroyo v. Puerto Rico Transportation Authority, 1 Cir., 164 F.2d 748.

In Hijo v. United States, 194 U.S. 315, 323, 24 S.Ct. 727, 48 L.Ed. 994, in holding that the Spanish-American War had not been terminated on the cessation of actual hostilities, the court speaking through Justice Harlan quoted approvingly the following from Kent: " 'A truce or suspension of arms * * * does not terminate the war, but it is one of the commercia belli which suspends its operations. * * * At the expiration of the truce, hostilities may recommence without any fresh declaration of war.' 1 Kent, Com. 159, 161." 194 U.S. 323, 24 S.Ct. 729.

The federal courts have consistently recognized that principle. Relative to World War II it was pointed out in Ludecke v. Watkins, 335 U.S. 160, 168, 68 S.Ct. 1429, 1433, 92 L.Ed. 881, that while "the state of war" may be terminated by a treaty or legislation or presidential proclamation, it had not been terminated by the proclamation of President Truman declaring a cessation of hostilities. That case pointed out that that situation was strikingly similar to that of 1919 upon the signing of the armistice, where the court with reference to an act making illegal the sale of liquor until "the conclusion of the * * * war", 40 Stat. 1046, observed:

> " 'In view of facts of public knowledge, some of which have been referred to, that the treaty of peace has not yet been concluded, that the railways are still under national control by virtue of the war powers, that other war activities have not been brought to a close, and that it cannot even be said that the man power of the nation has been restored to a peace footing, we are unable to conclude that the act has ceased to be valid.' Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. [146] at page 163, 40 S.Ct. [106] at page 111, 64 L.Ed. 194."

In Woods v. Cloyd W. Miller Co., 333 U.S. 138, 147, 68 S.Ct. 421, 425, 92 L.Ed. 596, it was said: "We have armies abroad exercising our war power and have made no peace terms with our allies not to mention our principal enemies." The holding being that the cessation of hostilities was not war's end.

And in In re Heye's Will, 195 Misc. 1026, 91 N.Y.S.2d 266, 270, the New York court, following the same rationale, held that a testamentary direction that executors pay no legacy to legatees residing in Germany "while Germany is engaged in any war" forbad the payment of such legacies until peace was officially declared, notwithstanding the President's said proclamation declaring the cessation of hostilities.

A late case somewhat in point is Miley v. Marshall, D.C., 100 F.Supp. 1012; Miley v. Lovett, 4 Cir., 193 F.2d 712, certiorari denied, 342 U.S. 919, 72 S.Ct. 366, 96 L.Ed. 687. The holding there was that an officer commissioned as a captain in the Judge Advocate General's Department, Officers Reserve Corps, U. S. Army, on his application dated July 31, 1946, was not entitled to his discharge, or release from active duty, on July 31, 1951 (the end of five years) when the act under which he was commissioned provided that an appointment "made in time of war" shall continue until six months after its termination, the war not then having been terminated.

We have given consideration to the authorities cited by appellant, but it would seem that those cases in the main arose where either the statute was ambiguous, which brought into play certain rules of construction, or where private contracts were involved which necessarily called for a construction of the intention of the parties.

Our conclusion is that the foregoing interpretation is correct and must be applied to the stated section of our tax statute to the effect that we were still at war with a foreign state during the year 1949, as that term is used therein.

The second contention must also be resolved against the appellant. This argument is that compensation for military service rendered by appellee to the United States, etc., was intended to apply "only to full-time military service in the armed services of the United States and not to organized reservists or national guardsmen,

etc., who were not on a full-time military service status" and that appellee was not on such latter status.

■ The statute is *sui generis*. It makes no distinction between personnel on active duty, either in the regular or reserve of any branch of the armed services, but merely states that compensation for military service rendered by any person to the United States when it is at war is not taxable. We have shown that in 1949 that was the status of our government and the statute is so plain and unambiguous as to not call to the aid any of the rules of statutory construction. The court must give the statute its meaning as imparted by the clear terms used. Hale v. State, 237 Ala. 191, 186 So. 163. It is our view that the proviso in the statute applies to appellee's compensation just as it would were he on active duty.

We have been favored with an exceptionally exhaustive brief by the Attorney General's office and have considered the authorities cited and discussed, but have concluded the contrary position to be the sounder view. So considered, the judgment below must stand.

Affirmed.

LIVINGSTON, C. J., and BROWN and GOODWYN, JJ., concur.