695 So.2d 1158 (1997)
Governor Fob JAMES, et al.
v.
Charles LANGFORD, et al.
Charles LANGFORD, et al.
v.
Governor Fob JAMES, et al.
1960728, 1960797.
Supreme Court of Alabama.
May 30, 1997.
Concurring Opinion May 16, 1997.
Champ Lyons, Jr., of Helmsing, Lyons, Sims & Leach, Mobile; and William P. Gray, Jr., Legal Advisor to the Governor, for Governor Fob James, Jr.
Robert A. Huffaker of Rushton, Stakely, Johnston & Garrett, P.A., for Phil Richardson.
David H. Marsh, Birmingham, for Albert McDonald.
Phillip E. Adams, Jr., of Walker, Hill, Adams, Umbach, Meadows & Walton, Opelika; William J. Baxley and Joel E. Dillard of Baxley, Dillard, Dauphin & McKnight, Birmingham; and George L. Beck, Jr., of Beck & Byrne, P.C., Montgomery, for Charles Langford, Robert Lowder, and James T. Tatum.
Joe Espy III of Melton, Espy, Williams & Hayes, P.C., Montgomery; and Robert D. Segall of Copeland, Franco, Screws & Gill, P.A., Montgomery, for Michael Figures (now deceased), W. H. Lindsey, and Hinton Mitchem, individually and in their official capacities as members of the Alabama Senate.
Concurring Opinion of Justice Houston, May 16, 1997.
HOUSTON, Justice.
These appeals involve the trustees of Auburn University and the power of the executive and legislative branches of state government.
Governor Fob James, Phil Richardson, and Albert McDonald appeal from the trial court's order declaring that Richardson and McDonald are not trustees of Auburn University representing what were formerly the second and eighth Congressional Districts. Robert Lowder, James Tatum, and Charles *1159 Langford appeal from the trial court's order declaring that Lowder and Tatum are no longer trustees representing these districts because their terms have expired. We affirm in part, reverse in part, and remand.
Amendment No. 161, Constitution of Alabama of 1901, in pertinent part, provides:
"The trustees [of Auburn University] shall be appointed by the governor, by and with the advice and consent of the senate...."
(Emphasis added.)
In an opinion by Justice Stone, this Court in Sadler v. Langham, 34 Ala. 311, 334 (1859), adopted the following statement from a New York judge writing in Oakley v. Aspinwall, 3 N.Y. 547, 568 (1850):
"`It is highly probable that inconveniences will result from following the constitution as it is written. But that consideration can have no weight with me. It is not for us, but for those who made the instrument, to supply its defects. If the legislature or the courts may take that office on themselves, or if under color of construction, or upon any other specious ground, they may depart from that which is plainly declared, the people may well despair of ever being able to set a boundary to the powers of the government. Written constitutions will be more than useless.
"`Believing, as I do, that the success of free institutions depends on a rigid adherence to the fundamental law, I have never yielded to considerations of expediency in expounding it. There is always some plausible reason for the latitudinarian constructions which are resorted to for the purpose of acquiring powersome evil to be avoided, or some good to be attained, by pushing the powers of the government beyond their legitimate boundary. It is by yielding to such influences that constitutions are gradually undermined, and finally overthrown. My rule has ever been to follow the fundamental law as it is written, regardless of consequences. If the law does not work well, the people can amend it; and inconveniences can be borne long enough to await that process. But, if the legislature or the courts undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the constitution which nothing can heal. One step taken by the legislature or the judiciary, in enlarging the powers of the government, opens the door for another, which will be sure to follow; and so the process goes on, until all respect for the fundamental law is lost, and the powers of the government are just what those in authority please to call them.'"
Have Richardson and McDonald been appointed as trustees of Auburn University? The answer to this question resolves this controversy, for clearly Richardson and McDonald are qualified to hold the office of trustees. See Danner v. Crawford, 527 So.2d 711, 712-13 (Ala.1988).
The Governor has appointed Richardson and McDonald; however, the Senate has not appointed Richardson and McDonald. "The trustees shall be appointed by the governor, by ... the senate." Amendment No. 161.[1]
This Court in State ex rel. Little v. Foster, 130 Ala. 154, 30 So. 477 (1901),[2] construed a constitutional amendment identical to the constitutional amendment at issue in this case, except that it dealt with a term of 6 years instead of the 12-year term provided for in the amendment now before us:

*1160 "Said trustees shall be appointed by the governor, by and with the advice and consent of the senate, and shall hold office for a term of six years, and until their successors shall be appointed and qualified."
130 Ala. at 158, 30 So. at 478. (Emphasis added.)
This Court wrote in Foster, regarding that constitutional provision:

"It is plain and unambiguous, and where this is the case, the framers of the constitution `should be intended to mean what they have plainly expressed and consequently no room is left for construction. Possible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere.' Cooley's Const. Lim. 69, 70. The framers of the constitution `must be understood to have intended what they said.... We can only learn what they intended, from what they have said. It is theirs to command, ours to obey. When their language is plain, no discretion is left to us. We have no right to stray into the mazes of conjecture, or to search for imaginary purposes.' The State v. McGough, 118 Ala. [159,] 166, [24 So. 397]."
130 Ala. at 162-63, 30 So. at 479. (Emphasis added.) This Court also declared in Foster:
"The constitutional provision not only creates the office of trustee, but prescribes the mode of filling it and the length of the term. The duration of the term is fixed at six years for all who may be appointed to fill terms after the expiration of the terms of the first incumbents. The mode prescribed for the appointment of incumbents to fill these terms is by the Governor by and with the advice and consent of the senate. The power of appointment here conferred is not upon the Governor alone. It is plainly conferred upon him and the senate jointly. The advice and consent of the senate is as much an essential to the due execution of the power as is the nomination by the Governor. The plain requirement from the language is, that both must be consulted, that both must consent, and that both must exercise the power reposed in them jointly. The senate can no more make the appointment, without the Governor, than the Governor can make it without the senate."
130 Ala. at 161-62, 30 So. at 479. (Emphasis added.)
Amendment No. 161 provides that trustees who have been appointed by the Governor and the Senate (such as Lowder and Tatum) "shall hold office for a term of twelve years, and until their successors shall be appointed and qualified." (Emphasis added.) Black's Law Dictionary 86 (6th ed.1990), defines the word "and" as: "A conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first." Therefore, Lowder and Tatum were appointed to 12-year terms with a constitutionally allowed holdover period contingent upon appointment by the Governor and the Senate of qualified successors. In this case, appointments of successors have not been made; therefore, the constitutionally allowed holdover period has not been terminated.[3]
We note that the attorney for Lowder and Tatum indicated during oral argument that Lowder and Tatum were seeking attorney fees; however, they made no argument in their brief regarding attorney fees and made no further argument at oral argument. Therefore, that issue is not properly before us for review.
The judgment is affirmed to the extent it holds that Richardson and McDonald are not trustees of Auburn University. It is reversed to the extent it holds that Lowder and Tatum are not trustees of Auburn University.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
*1161 ALMON, SHORES, KENNEDY, COOK, and BUTTS, JJ., concur.
HOUSTON, J., concurs specially.
HOOPER, C.J., and SEE, J., dissent in part and concur in part.
MADDOX, J., recuses.
SEE, Justice (dissenting in part and concurring in part).
I respectfully dissent from the majority's holding that the prior trustees of Auburn University continue to serve. Amendment No. 161 to the Constitution of Alabama of 1901 provides in pertinent part:
"The trustees shall be appointed by the governor, by and with the advice and consent of the senate, and shall hold office for a term of twelve years, and until their successors shall be appointed and qualified. The board shall be divided into three classes, as nearly equal as may be, so that one-third may be chosen quadrennially. Vacancies occurring in the office of trustees from death or resignation shall be filled by the governor, and such appointee shall hold office until the next meeting of the legislature."

I. EXPIRATION OF THE PRIOR TRUSTEES' TERMS OF OFFICE
In fulfilling our duty to interpret this constitutional provision, we do not write on a blank slate. The majority holds that the phrase "until their successors shall be appointed and qualified" allows a trustee to remain in office indefinitely after his specified term expires, unless and until the Governor and the Senate agree on a replacement trustee. Although the majority's interpretation is superficially appealing, it contradicts nearly a century of consistent jurisprudence that the framers of Amendment No. 161 had before them when they adopted the legal term of art "until their successors are appointed and qualified."[4]
More than a century ago, in City Council of Montgomery v. Hughes, 65 Ala. 201, 203 (1880), this Court interpreted the phrase "until their successors are duly elected and qualified" as it applied to elected city officials. Chief Justice Brickell adopted the already long-established rule of the English judges that such a holdover period was provided merely to allow a reasonable time for the newly elected officials to confirm their qualifications and assume office. Id. at 206-07 (citations omitted). He stated:
"We are not without some experience, in this State, of the temptations such a construction offers defeated candidates for re-election to municipal offices, by vexatious litigation to prolong their official terms. The manifest object of the clause is, to prevent a misconstruction of the charter, possible if there was not express provision for the interval elapsing of necessity between an election and the qualification of the officer. This interval may vary in length, under particular circumstances; but it was never within the legislative contemplation, that, under this clause, an official term could be prolonged beyond a reasonable time for the newly elected officer to qualify. If for such time he failed to qualify, there would be a vacancy, to be filled as the charter directs."
Id. at 207 (emphasis added). A quarter century later, in Prowell v. State ex rel. Hasty, 142 Ala. 80, 83, 39 So. 164, 166 (1905), this Court stated in unmistakable language:
"We regard it as the settled law of this State that the words `until his successor is elected and qualified' [were] never intended to prolong the term of office beyond a reasonable time, after the election, to enable the newly elected officer to qualify."

(Emphasis added.)[5] Just 10 years before the proposal of Amendment No. 161, this *1162 Court reiterated: "It is now the settled law of this state that the words `until his successor is elected and qualified' were never intended to prolong the term of office beyond a reasonable time...." (Emphasis added.) State ex rel. Benefield v. Cottle, 254 Ala. 520, 521, 49 So.2d 224, 225 (1950).[6]
These repeated precedents spanning almost a century prior to the adoption of Amendment No. 161 are the best evidence of what the framers of the words "until their successors shall be appointed and qualified" intended. See generally Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1, 26-30, 111 S.Ct. 1032, 1042, 113 L.Ed.2d 1 (1991) (Scalia, J., dissenting) ("[R]epeated judicial decisions for more than a century are to be received as the best exposition of what the law is ....") (quoting Day v. Woodworth, 13 How. 363, 371, 14 L.Ed. 181 (1851)).[7] The choice of these time-honored words reflects the Legislature's intent not to experiment with a newly crafted phrase, but to embrace the security of the consistent interpretation adhered to by this Court. See Fox v. McDonald, 101 Ala. 51, 66-67, 13 So. 416, 419-20 (1893) (stating that constitutional provisions should be interpreted in light of the history before their ratification). I conclude, therefore, that the legitimate holdover periods of the prior trustees in this case expired a "reasonable time" after their specified terms ended.
I would further hold that a "reasonable time" expired when the Legislature met from April 18 to July 31, 1995, and had the opportunity to confirm the Governor's nominees to fill the new 12-year terms that began on January 19, 1995. See Hughes, 65 Ala. at 203.[8]

II. EFFECTIVENESS OF APPOINTMENTS OF INTERIM TRUSTEES
Once the terms of the prior trustees expired, the question arose whether the Governor's interim appointments were effective. In State ex rel. Little v. Foster, 130 Ala. 154, 30 So. 477 (1901), this Court dealt with a constitutional provision that addressed the *1163 filling of a vacancy created upon the expiration of the term of a University of Alabama trustee, and a statute[9] that addressed the filling of a vacancy created by a trustee's leaving office before the expiration of his term. The Foster Court held that the words of the constitutional provision"Said trustees shall be appointed by the Governor, by and with the advice and consent of the senate, and shall hold office for a term of six years" (see 130 Ala. at 158, 30 So. at 478) required both the Governor and the Senate to appoint a trustee upon the creation of a vacancy created by the expiration of a six-year term. Id. at 163, 30 So. at 480. In contrast, interim vacancies (i.e., those created during a term by death, resignation, or removal) could be filled by gubernatorial appointments, without Senate confirmation, under the statute.[10]Id. at 164, 30 So. at 480.
The expiration vacancy provision of Amendment No. 161, at issue in this case, uses language virtually identical to that addressed in Foster: "The trustees shall be appointed by the governor, by and with the advice and consent of the senate, and shall hold office for a term of twelve years...." Ala. Const. 1901, amend. 161. Under the holding in Foster, this clause, standing alone, requires both the Governor and the Senate to appoint replacement trustees to fill vacancies created by the expiration of the terms of the prior trustees.
In addition to its expiration vacancy provision, Amendment No. 161 also allows the Governor alone to fill certain vacancies until the next meeting of the Legislature:
"Vacancies occurring in the office of trustees from death or resignation shall be filled by the governor, and such appointee shall hold office until the next meeting of the legislature."
(Emphasis added.) Like the statute in Foster, this language applies to vacancies created by death or resignation, not to vacancies created by expiration of a specified term.[11] Thus, in my view, Foster compels the conclusion that Amendment No. 161 requires both the Governor's action and the Senate's action to appoint a trustee to fill a vacancy created by the expiration of a specified term.[12]
While I concur in the majority's conclusion that the interim appointments were ineffective, *1164 I dissent from its conclusion that the prior trustees hold over. Amendment No. 161 and Foster compel the conclusion that the vacancies created by the expiration of the specified terms must remain unfilled until the Governor and the Senate reach political agreement as to who shall serve as Auburn's trustees.[13]
HOOPER, C.J., concurs.
HOUSTON, Justice, concurring specially.
I would add the following paragraph to footnote 3:
In unbinding dicta in Kittle v. State, 362 So.2d 1271 (Ala.1978), this Court stated that a jury commissioner's term of office had expired even though there had been no appointment of a successor commissioner. This case involved a statute (Ala. Code 1975, § 12-16-32), not the Constitution. The statute provided that "the governor shall appoint the members of said jury commission for and only during the tenure of office of the governor making the appointment and until their successors are appointed and qualified." In the per curiam opinion, the Court stated: "Old commissioners may [hold over] for a `reasonable time' or until their successors are appointed." 362 So.2d at 1274. The Court did not analyze the phrase "for and only during the tenure of the office of the governor making the appointment" or cite any precedent for allowing the jury commissioners to hold over for a "reasonable time." Nor did the Court analyze the phrase "and until their successors are appointed and qualified" cite any precedent for rewriting this to "or until their successors are appointed."
NOTES
[1] Article II, § 2, of the United States Constitution, which defines the powers of the President, provides in pertinent part:

"[The president] shall nominate, and by and with the advice of the senate, shall appoint ambassadors, other public ministers and consuls, judges of the supreme court, and all other officers of the United States, whose appointments are not herein otherwise provided for...."
(Emphasis added.)
[2] Governor James, Richardson, and McDonald contend in their brief that State ex rel. Little v. Foster as been overruled sub silento by Stenstrom v. Smith, 534 So.2d 234 (Ala.1988), and in oral argument they contended it has been overruled by Ham v. State ex rel. Blackmon, 162 Ala. 117, 49 So. 1032 (1909). These cases are inapplicable, in light of the specific constitutional language providing for appointment by the Governor and the Senate.
[3] Because there was no appointment in this case, this case is distinguishable from the holdings in those election cases cited by Governor James, Richardson, and McDonald, and the dissent to this opinion, in which this Court has held that the words "until his successor is elected and qualified" were not intended to prolong the term of office beyond a reasonable time after the election. In those cases, there had been an election. Even the dissent admits that there had been no appointment in this case.
[4] Amendment No. 161 of the Constitution of Alabama of 1901 was proposed by Acts 1961, p. 1632, submitted on December 5, 1961, and proclaimed ratified on December 18, 1961. Proclamation Record, Volume O, p. 117.
[5] The majority relies on State ex rel. Little v. Foster, 130 Ala. 154, 30 So. 477 (1901), for the proposition that the phrase "until their successors shall be appointed and qualified" provides for infinite holdover. In fact, Foster expressly declined to rule on the holdover issue:

"[C]onceding as contended by defendant (but we express no opinion on this point) that the hold-over clause was not part of the relator's term, the question nevertheless is, could the appointment be made in any other mode than [by the Governor and the Senate]?"
Id. at 160, 30 So. at 479. (Emphasis added.) Thus, in addition to ignoring nearly a century of precedent that is applicable to the analysis of the holdover term, the majority's holding relies on a conclusion that the Foster Court did not reach.
The issue that was addressed in Foster was whether the Governor, without the Senate, could appoint a trustee to fill a vacancy created by the expiration of a specified term. Id. at 160-62, 30 So. at 478-80. This Court held that the Constitution of Alabama of 1875 provided for only one method of appointment for vacancies created by the expiration of a termappointment by the Governor and the Senate. Id. at 163, 30 So. at 480. ("The conclusion is irresistible, that the clause of the constitution [, requiring appointment by the `Governor, by and with the advice of the senate,'] applies to all appointments made to fill vacancies created at the expiration of a term....").
[6] This Court continued its steadfast interpretation of the phrase at issue in this case in In re Kittle, 362 So.2d 1271, 1274 (Ala.1978) (per curiam). In Kittle, id., this Court held that jury commissioners appointed by the Governor, who held office for a limited term "and until their successors are appointed and qualified," held over in office only for a "reasonable time" after their limited terms expired. The Court further held that a reasonable holdover period did not extend to 18 months and thus, in the absence of an effective reappointment, there was a vacancy in the jury commissioner's office. Id. Accord Siegelman v. Folmar, 432 So.2d 1246, 1250 (Ala. 1983) ("It is now the settled law of this state that the words `until his successor is elected and qualified' were never intended to prolong the term of office beyond a reasonable time ....") (emphasis added) (quoting State ex rel. Benefield v. Cottle, 254 Ala. 520, 521, 49 So.2d 224, 225 (1950)).
[7] Justice Scalia noted that although the Due Process Clause of the Fourteenth Amendment might commonly be equated with "service of process" (e.g., with certain writs employed in English courts), the interpretation of Lord Coke, Blackstone, and Justice Storey confirmed that the clause drew its true meaning from the phrase "Law of the Land" contained in the Magna Carta. See Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 28-30, 111 S.Ct. 1032, 1048-50, 113 L.Ed.2d 1 (1991) (citing 2 Coke, Institutes 50 (5th ed. 1797), 2 W. Blackstone, Commentaries 133, nn. 11, 12 (S. Tucker ed. 1803), and 3 J. Storey, Commentaries on the Constitution of the United States 661 (1833)).
[8] This conclusion is reinforced by the provision in Amendment No. 161 that empowers the Governor to make an appointment to fill an interim vacancy with his interim appointee "hold[ing] office until the next meeting of the legislature." It is at the next meeting of the Legislature, of course, that the Senate has the opportunity to confirm the Governor's nominees.
[9] The statute relevant in Foster provided in pertinent part:

"[I]n the case of vacancy, the Governor shall appoint, the appointee to hold until the adjournment of the next regular session of the legislature, at which session he shall nominate to the Senate, as in the original appointment; and the trustee, so appointed, and confirmed by the Senate, shall hold for the part of the original term still unexpired...."
Alabama Acts 1876, Act No. 152, § 9.
[10] In Stenstrom v. Smith, 534 So.2d 234, 235 (Ala.1988), this Court dealt with Section 276 of the Constitution of Alabama of 1901 (as amended by Amendment No. 89), which provides: "The governor shall, with the advice and consent of the senate, appoint the adjutant general and all general officers." Despite the absence of either constitutional or statutory provisions granting such authority, this Court held that "when the legislature is not in session, the Governor can appoint the adjutant general and he shall take office subject to the subsequent confirmation or failure to confirm by the Senate." 534 So.2d at 236. Section 276, as amended by Amendment No. 89, differs from the constitutional provisions in Foster and in this case, in that it does not provide for definite terms of office (e.g., 6 years, 12 years). Thus, the vacancies dealt with in Stenstrom are like interim vacancies (i.e., vacancies created by death, resignation, or removal from office), and the method of filling those vacancies is consistent with the method of filling the interim vacancies in Foster, 130 Ala. at 163, 30 So. at 480.
[11] Although the events of death and resignation may not be an exhaustive list of vacancies, the interim appointment provision of Amendment No. 161 nonetheless applies only to nonexpiration types of vacancies (e.g., removal from office). See McRae v. State, 269 Ala. 241, 112 So.2d 487 (1959).
[12] This result is not altered by Ala.Code 1975, § 16-48-6, which provides:

"Any vacancy in the office of trustee, occurring during the recess of the Legislature, shall be filled by appointment of the Governor, such appointee to hold office until the next session of the Legislature thereafter; such vacancy shall be filled by the Governor, by and with the consent of the Senate; and any trustee appointed to fill a vacancy by the Governor, by and with the consent of the Senate, shall hold during the unexpired term."
This provision applies only to interim vacancies. If we were to interpret it to apply to expiration vacancies as well, we would create a conflict with Amendment No. 161: the Constitution requires Senate confirmation, while the statute does not. It was for this very reason that the Foster Court rejected such a broad construction of the statute before it. Foster, 130 Ala. at 162, 30 So. at 479.
[13] In Foster, 130 Ala. at 160, 30 So. at 478, this Court commented on the possible failure of the Governor and the Senate to reach agreement as to who should serve as a trustee for the University of Alabama:

"[I]n case of an irreconcilable disagreement between the senate and the Governor as to who is a fit and proper person to fill the office; a contingency not likely to arise, but should it happen, there would simply be, unfortunately, a casus omissus [i.e., a contingency for which no provision is made at law]. As under the Federal constitution, should the General Assembly refuse or fail to elect a senator, the State would be short one representative in Congress, a contingency which has happened, but which has not been regarded as being within the competency of the legislative branch of the government, or of the courts, to remedy."